## Shepley *against* Lytle.

A power of attorney to receive legacy under a will, which consisted of a certain portion of the residuum of the testator's personal estate, with a receipt and release endorsed upon it, cannot be so construed as to embrace a release of a devise of real estate; although the money received upon it was in amount greater than the legacy.

The statute of limitations does not begin to run, until there has been a right of action against the person in possession, although he may have declared his possession to be adverse.

ERROR to the district court of *Allegheny* county.

John Lytle and others, heirs-at-law, of William Lytle, deceased, against Philip Shepley.    This was an action of ejectment, for the one-tenth part of four hundred and fifteen acres of land.    The whole tract of land had been the property of Robert Lytle, who died in the year 1811, having first made his last will and testament, as follows:

"In the name of God, amen.    I, Robert Lytle, of Mifflin township, and Allegheny county, being weak of body, &c., do make and ordain this my last will and testament.    First, I commit my soul to God, who gave it, and my body to the earth, to be buried in a decent manner, by my executors.    First, I give to my beloved wife, Ann Lytle, the third of all my personal property, after my decease; also, I give to my son, James Lytle's, five children, each 30 dollars, and the remainder of my real and personal property, I will to be equally divided betwixt my children; and further, I do appoint Samuel Heth, Jun., my whole and sole executor, &c."

William Lytle, the father of the plaintiffs, was one of the children of Robert Lytle, and claimed the one-tenth part of the real estate of the testator, devised to him by this will.

The defendant was the guardian of the children of Abraham Lytle, another son of Robert Lytle, and defended against the plaintiff's recovery, on the ground that Abraham Lytle had purchased the interest of William Lytle in the land, during his lifetime, and

[Shepley v. Lytle.]

as evidence of it, he produced the following power of attorney and receipt.

" Know all men by these presents, that whereas, Robert Lytle, late of the county of Allegheny, and state of Pennsylvania, by his last will and testament, in writing, bearing date 1811, last past, did give and bequeath unto me, William Lytle, of the county of Bracken, and state of Kentucky, a certain legacy to be paid unto me by said will, made and constituted Samuel Heth, of said county of Allegheny, and state of Pennsylvania, sole executor of said will; as by said will and testament will more fully appear. Now, know ye, that I, the said William Lytle, have made, accredited, nominated, and appointed Abraham Lytle, of the county of Allegheny, my true and lawful attorney, for me and in my name, and for my own proper use and benefit, to ask, demand, and receive of and from the said Samuel Heth, the said legacy, so bequeathed to me, as aforesaid, by the said will of the said Robert Lytle, and upon receipt thereof, or payment made to my said attorney, a general release or discharge for the same to make, execute, and deliver, hereby ratifying, and confirming, and allowing whatever my said attorney shall lawfully do in the premises.

In witness whereof, I have hereunto set my hand and seal, this 13th day of August 1812.          WILLIAM LYTLE, [L. s.]"

Upon which was endorsed the following receipt:

" Received of Abraham Lytle, 200 dollars, being in full satisfaction for my legacy, bequeathed to me by Robert Lytle, deceased, late of Allegheny, state of Pennsylvania, and I do hereby acquit and forever discharge the said Abraham Lytle, his heirs, executors, and administrators, and all other persons, from any manner of amount of the said legacy. Witness my hand and seal, this 13th day of May 1812.          WILLIAM LYTLE, [L. s.]"

At the date of this power of attorney, the administration account of the estate of Robert Lytle, deceased, had not been settled; but when it was afterwards settled, the personal estate in the hands of the executor for distribution, gave to each of the children 90 dollars.

In 1814, Abraham Lytle having purchased another share of the estate, he and his brothers and sister made partition, in pursuance of which, he went into possession of the land; and has held it ever since; and, therefore, the defendant contended, that the statute of limitations was a bar to the plaintiffs' recovery in this suit, brought in 1836.

In answer to this, the plaintiffs proved, that on the 24th of September 1811, Abraham Lytle and his brother, Samuel, had taken a lease of the land, from their father, for five years, from the 1st of April 1812, and contended that twenty-one years had not elapsed from the termination of this lease, in 1817, before suit brought.

The court below (Grier, president) instructed the jury, that the power of attorney and release could not be so construed as to bar

the plaintiffs' recovery; that the statute of limitations did not begin to run until the termination of the lease, and that their verdict should be for the plaintiffs.    Verdict accordingly.

*M'Candless*, for plaintiff in error.
*Shaler*, for defendants in error.

The opinion of the Court was delivered by

KENNEDY, J.—The several matters embraced in the assignment of errors may be resolved into three questions.    First, Can the letter of attorney, and the receipt or acquittance endorsed thereon, taken either together as one instrument or separately, be so considered as to embrace the interest, which William Lytle, the father of the plaintiffs below, acquired under his father's will in the real estate of the latter?    Secondly, If not, were there any facts or circumstances testified to which made it the duty of the court to have left the construction thereof to the jury, to be determined therefrom by them, whether William Lytle released or intended to release to his brother Abraham, his interest in their father's real estate?    And thirdly, Could the statute of limitations, under the evidence given, be considered as forming a bar to the recovery of the plaintiffs below?

As to the first question, his Honour, the Judge of the court below, in his charge to the jury, took the power of attorney and the acquittance endorsed thereon together, as having reference to the same object, and forming parts of the same transaction; and was decidedly of opinion that they could not be construed as embracing the real estate, or any thing more than that portion of the personal estate of the testator, to which William was entitled under the will. On the second question, he was also of opinion, and so instructed the jury, that no circumstance was disclosed by the evidence which would warrant the conclusion, that the parties were ignorant of the legal meaning of the terms and phrases employed therein, and therefore to construe the acquittance into a deed for land, though it might possibly be in conformity to what the parties intended, yet it would be clearly contrary to their own expressions of intention: in short, that there was no evidence given in the cause which would warrant the inference that the parties intended to embrace the interest of William in the real estate under his father's will.    On both these questions we think his Honour instructed the jury correctly.    The power of attorney is drawn up in terms, the meaning and import of which are as free from ambiguity as any that could have been selected, and peculiarly appropriate to William's interest in the personalty alone; so much so, that they completely exclude all idea of any interest in the realty being either included or intended to be so.    There is a precision and perspicuity in the language going to show that William's interest in the personal estate was all that was intended to be embraced, which it would not be very easy, perhaps,

to improve, or render more clearly expressive of such intention. Assuming that the object of the parties was to contract for William's interest in the personal estate only, I confess I do not know that other terms could have been selected more appropriate and clearly expressive of it. It may be said, however, that negative words might have been used, which would have rendered the design of the parties, in this respect, more certain and less questionable; but admitting this to be true, it is seldom, if ever resorted to, and certainly not required; otherwise the maxim, *expressio unius est exclusio alterius*, would never have been introduced or established. The letter of attorney first recites the fact of Robert Lytle's having made a will, whereby he gave and bequeathed a certain *legacy to be paid* to the constituent, and *appointed Samuel Heth sole executor thereof;* and then the constituent thereby constitutes Abraham Lytle his attorney for him, and in his proper name, use and benefit to ask, demand and receive of and from the *said Samuel Heth* the *said legacy so bequeathed* to him, the constituent, and upon *receipt* thereof or *payment made*, to execute a general release for the same. Now from the phraseology here used, it is perfectly obvious that the real estate, devised by the testator, is as completely excluded from the letter of attorney as if negative terms of the most pointed and apposite character had been introduced; and that the authority, thereby conferred, is confined strictly to the constituent's portion of the personal estate, which alone was in the hands of the executor, who had nothing whatever to do with the real estate.

Then as to the acquittance endorsed on the letter of attorney, what is there in it tending to show that the 200 dollars, therein mentioned as received by William and paid by Abraham, was for any thing but the legacy designated in the letter of attorney? It is stated to have been received " in full satisfaction of his *legacy bequeathed* to him by Robert Lytle, deceased;" thus using almost the identical terms of the letter of attorney; and being written at the same time on the back of it, renders it impossible, even by the utmost stretch of imagination, to come to any other conclusion than that the same legacy or thing was not only intended to be, but is precisely the same with that specified in the letter of attorney, and thereby authorized to be received from Mr Heth, the executor. The letter of attorney, and the acquittance, then, taken together, furnish evidence only, at most, of a purchase by Abraham Lytle from William Lytle, of the *legacy* or amount coming to the latter out of the personal estate of their late father.

Next what are the circumstances relied on, which, it is alleged, made it a question of fact proper to be left to the jury, to be decided by them, whether William's interest in the real estate of their father derived from the will of the latter, was not actually embraced in the purchase as well as that in the personal? The only circumstance appearing in the evidence, that has been laid hold of for this purpose is, that the 200 dollars paid by Abraham and mentioned

in the acquittance, exceeded the amount of William's portion of the personal estate about 110 dollars; and hence it has been contended that something more, to make up the difference, must have been included in the subject of the purchase, to which William had a claim under the will: and as he had no other right derived from it except his interest in the real estate, it must, therefore, necessarily have been included also. It has likewise been urged, that the word "heirs," in the acquittance, favours and supports this argument. But certainly there is nothing in this; for in giving a release or acquittance from a mere personal claim or obligation, nothing is more common than to make it extend *expressly* to the *heirs, executors* and *administrators* of the party, as well as to the party himself, though unnecessary in a release, which operates as a mere extinguishment of the right of obligation. It would therefore be unreasonable, as well as unsafe, to infer that the word "heirs" was introduced into the acquittance with a view to create and pass an estate of inheritance, that is in nowise described in any part of the instrument. In truth, it is too plain to admit of the least doubt, that it was only used in reference to the subject of the acquittance as previously expressed, which was simply the *legacy* in the technical sense of the word, and done, perhaps, by the scrivener for the purpose, as he might have thought, of rendering the acquittance more perfect: and with a like view he probably introduced the *personal representatives* of Abraham and "*all other persons,*" which was also quite unnecessary.

Then as to the difference in amount between the sum received by William of Abraham for his legacy, and the real sum coming to him under the will out of the personal estate, it may be very rationally and fairly accounted for from the other circumstances given in evidence, without embracing his interest in the real estate: for they are sufficient to remove every ground for the slightest suspicion that otherwise might arise, of something more having been the subject of the purchase between the parties. I allude he e first to the circumstance of the administration account of the executor not being settled at the date of the acquittance, nor for two years afterwards, which rendered it next to impossible for Abraham and William to know, at that time, the amount that would be coming upon settlement thereof to the latter; so that the probability is, they must have guessed at it, and in doing so, made it 200 dollars, instead of about 90, as it turned out to be afterwards, upon a settlement being made by the executor of the estate. The terms of the acquittance would also seem to favour this idea, because it is therein stated expressly to be an acquittance and discharge "from every manner of amount;" so that no more should be claimed thereafter on account of the same from Abraham, let the amount thereof be what it might, either more or less; showing also, perhaps, that each had agreed to take the risk of any loss that might accrue on account of the true sum differing thereafter materially from the one so agreed on. Next are

[Shepley v. Lytle.]

the circumstances given in evidence of the value of William's interest in the real estate; being at that time from *seven to nine hundred dollars;* of his having resided from before the death of his father until then, in the state of Kentucky; of Abraham's being, at the time, an occupant of the estate, and consequently knowing the value of it well, though he most probably could not and did not know the real value of the personal estate.   Now suppose all these circumstances to be true, and that it had been proved, without more being disclosed, that William had agreed, for the 200 dollars, to release all his interest in the real estate to Abraham, would not a strong feeling of suspicion be apt to arise, that Abraham had not dealt fairly with him?   So far, then, as the circumstances given in evidence seem to have any bearing on the case, they go to show that the interest of William in the real estate could not have been the subject of purchase or release at the time of giving the acquittance, or if so, he must have been deceived.

But admitting that the circumstances proved were such as barely to excite some suspicion that the 200 dollars were given for something more than the legacy or portion coming to William out of the personal estate, without any evidence whatever being given tending to prove either mistake or fraud being committed in the writing or obtaining of the receipt or acquittance; upon what principle or ground can it be claimed, that the construction thereof should have been left to the jury?   Surely, without some evidence tending to show either mistake or fraud in this respect, it belonged to the court, and was its peculiar duty, to direct the jury in the construction which the law put on the power of attorney and the acquittance; and it became the bounden duty of the jury, under the oaths or affirmations taken by them, to find their verdict in conformity to the construction so given by the court.

There was certainly not the least tittle of evidence given on the trial, going to show, that any thing more was intended to be paid for, by the 200 dollars, than the legacy, which is described in the letter of attorney and acquittance; but had there been any tending to prove that William's interest in the real estate was sold, and intended to have been included in the acquittance, then other questions might have arisen of pretty serious import.   For, as his interest in the real estate is certainly not mentioned in the acquittance, it might have been made a question, whether enough was done by the parties to take the purchase out of the statute of frauds; and if so, whether the agreement on the part of William to sell such interest had been fairly obtained or not: but from the state of the evidence, it is manifest, these questions cannot be raised, and need not be discussed, or decided here.

In respect to the construction of releases, however, it may be further observed, that generally, when such an instrument contains a particular recital, or words in any other form, showing that a

vi.—3 o

[Shepley v. Lytle.]

specific object, duty or right only, was intended by the parties to be embraced, or that it was the moving cause for executing the release, subsequent general words therein will be qualified and restrained by the previous particular recital or specification.  *Bac. Abr. tit. Release*, (*K*).  Here the legacy is mentioned as the specific object of the acquittance, so that if general words had even followed, unless they had been such as to have shown clearly, beyond all doubt, that more was intended to be included by using the word "legacy," than what is contained in it, according to its usual and technical import, and likewise, what that was, which was so intended to be embraced besides the legacy, it could not have availed the defendants below, or have changed the construction put on the acquittance by the court.  There is also, another rule, which prevails to some extent, and is not to be overlooked altogether, in the exposition of deeds, which seems to militate against the construction contended for by them.  Here the acquittance, in order to answer the purpose of the defendants below, must either be regarded as a release enlarging the estate of Abraham in the real estate, who was the lessee of it, at the time, for a term of years, or as a deed conveying William's interest therein to him, in the premises of which, the legacy coming to William under the will from the executor, is all that is mentioned; and it being the proper office of the premises in every deed of the kind, to describe with reasonable certainty the thing intended to be conveyed, the granting part of the deed is, therefore, not to be extended beyond the legacy.  In regard to this rule, it has been said, if the thing granted be only in the *habendum*, and not in the premises of the deed, the deed will not pass it; but Mr. Preston seems to think this proposition too general.  See *Preston's Shep. Touch.* 76.

Then as respects the statute of limitations being a bar to the recovery of the plaintiffs below, which is the third question.  The statute cannot be considered under the circumstances of this case, as having commenced running before the expiration of the term in the lease, taken by Abraham, of the testator in his lifetime; which did not expire until the 1st of April 1817.  But the writ of ejectment here being sued out in April 1836, the action was, therefore, commenced nearly two years before the twenty-one years, the time required by the statute, had run.  Until the 1st of April 1817, Abraham was entitled to the possession of William's interest in the real estate under the lease, and his holding it to that time, was, therefore, perfectly consistent with William's claim to it.  And, although the partition made of the estate, between Abraham and one of the other devisees thereof in 1814, was altogether repugnant and incompatible with William's right in it, yet it does not appear, that he had any knowledge of it whatever; and the disclaimer of the tenant cannot affect the right of the lessor or his assignee, so as to render the possession of the former, adverse to the right of the

[Shepley v. Lytle.]

latter, until he has notice of it, and acquiesces in it.    We are, therefore, of opinion, that none of the errors assigned have been sustained.

Judgment affirmed.