## Brill's Estate.

Argued January 8, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN and PATTERSON, JJ.

*H. Eugene Gardner,* for appellant.

*Henry Thomas Dolan,* with him *C. William Kraft, Jr.,* and *Robert C. Duffy,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, March 25, 1940:

This is an appeal from the refusal of the court below to allow a claim presented by appellant at the audit of the account of the executrix of J. Edward Brill who died on January 10, 1936, leaving a will, executed in 1922, in which he gave his entire estate to his widow, whom he also named executrix.

In 1909 or 1910, although then married to Edith C. Brill, his widow, Brill went through the form of a marriage ceremony with the appellant Mary B. Betz, then Mary B. Seabrooke, using the name of Dawson. Thereafter, in 1911, a child, allegedly the son of the decedent, was born to appellant.

On February 9, 1914, Brill gave appellant a bond under seal in the sum of $20,000 obligating himself to pay her substantial sums for the support of herself and her son during Brill's lifetime and providing for the payment by his estate of "the whole principal sum of $20,000" to an unnamed trustee for the benefit of appellant as to one-half, so long as she remained unmarried, and for the benefit of her son until he reached the age of twenty-five years, in the event Brill pre-deceased appellant and her son. The bond provided for the appellant's placing in the possession of Brill "certain letters and an alleged certificate," identified as the certificate of the void marriage.

In 1915 appellant instituted suit on the bond, Brill being in arrears thereunder. The suit was subsequently compromised, Brill paying claimant the sum of $5,000 in exchange for a general release executed by appellant in her own behalf as well as on behalf of her son. The release was subsequently held invalid as to the son. See *Brill v. Brill,* 282 Pa. 276.

At the audit of the account of Brill's executrix, appellant presented a claim for $3,000 under an instrument, testamentary in form, which Brill had delivered to her in 1913, wherein he gave her a legacy in the

amount of the claim. The instrument was admittedly executed by Brill, and appellant introduced testimony for the purpose of showing that it was given to her in exchange for the certificate evidencing the purported marriage (apparently the same paper as that referred to in the bond given appellant in 1914), also that at the time of this transaction Brill agreed that he would never "make another will in favor of someone else."

The auditing judge found that the obligation of the bond given appellant in 1914 was assumed by Brill and accepted by appellant with the intention that it be in substitution for whatever rights appellant may have had under the 1913 transaction, and held that her rights thereunder, if any, were within the contemplation of the parties at the time of the execution of the release and barred thereby.

Appellant states the only question for determination to be "Does a General Release given by Appellant to Decedent extend beyond the express consideration for which it was given so as to operate as a Release of obligation by Decedent to Appellant?"

It is true that ordinarily the words of a release should not be construed to extend beyond the express consideration mentioned so as to make a release for the parties which they never intended or contemplated. Thus, general words of a release will not usually be construed to bar a claim which had not accrued at the date of the execution of the release (*Rapp v. Rapp*, 6 Pa. 45), nor a claim, the existence of which was not known to the party giving the release (*Cockroft v. Metropolitan Life Insurance Co.*, 125 Pa. Superior Ct. 293). But, the rule is merely one of construction, and is never applicable to bar a claim where the very language used by the parties excludes its use for that purpose: *Flaccus v. Wood*, 260 Pa. 161, 167.

The release is very broad in its terms. It releases Brill, as also his heirs, executors, and administrators,

not only "of and from the said recited bond or obligation and of and from . . . the payment of any sum or sums of money therein named, and of and from the payment of any other sum or sums of money whatsoever for my past or future support and maintenance," but also releases Brill, his heirs, executors and administrators "of and from all and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity, which against the said J. Edward Brill I ever had . . .".

The language of this release, indicating as it does that the parties had in mind a general settlement of all accounts up to that time, amply warrants the conclusion of the court below that whatever rights appellant may have had, if any, by reason of the alleged agreement of 1913, were within the release and barred thereby. It is well settled that where the terms of a release and the facts and circumstances existing at the time of its execution indicate the parties had in mind a general settlement of accounts, the release will be given effect according to its terms: *Flaccus v. Wood,* supra, and cases there cited. We are convinced that the conclusion of the court below accords with the intention of the parties at the time of the execution of the release.

The decree appealed from is affirmed. Costs to be paid by appellant.