## Cady *v.* Mitchell, Appellant.

Argued April 12, 1966. Before ERVIN, P. J., WRIGHT, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WATKINS, J., absent).

*David B. Fawcett, Jr.,* with him *Dickie, McCamey & Chilcote,* for appellant.

*Thomas Hollander,* with him *Evans, Ivory & Evans,* for appellees.

OPINION BY MONTGOMERY, J., June 17, 1966:

The primary question in this appeal is the effect of a general release signed by both appellees ". . . of any damage, loss or injury, which heretofore have been or which hereafter may be sustained by us in consequence of accident which occurred on 11-17-60 at McKeesport, Pa.", and which contained a further provision that, "This release extends and applies to, and also covers and includes, all unknown, unforeseen, unanticipated and unsuspected injuries . . ."

The consideration for the release was $130.42, the amount of the lowest estimate received by appellant for the repair of the automobile involved in the accident which was owned by Mr. Cady. At the time of the execution of the release Mrs. Cady disclaimed any injuries from the accident, except a slight nervousness, described by Mr. King, a witness for the appellant, as a normal reaction from any automobile accident. However, Mr. King, who was the representative of appellant's insurance carrier, according to his own testimony, included Mrs. Cady in the release as an extra precaution, knowing at the time that she asserted no bodily injuries, nor were any apparent. It is also noted that Mr. King took separate releases from the appellees for injuries sustained by their children who were injured in the accident.

Subsequently Mrs. Cady developed symptoms which indicated she had sustained bodily injuries in the accident, for which she sought damages in this lawsuit. The record is clear that these injuries were not known

to either party at the time of the execution of the release.

A release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties when it was given and the words used in a release ought never to be extended beyond the consideration; otherwise it would make a release to the parties, what they never intended or contemplated. *Cockcroft v. Metropolitan Life Insurance Company*, 125 Pa. Superior Ct. 293, 189 A. 687 (1937), cited with approval in *Brill's Estate*, 337 Pa. 525, 12 A. 2d 50 (1940). Where the terms of the release and the facts and circumstances existing at the time of its execution indicate the parties had in mind a general settlement of accounts, the release will be given effect according to its terms. *Brill's Estate*, supra; *Flaccus v. Wood*, 260 Pa. 161, 103 A. 549 (1918). However, *Flaccus v. Wood* is also authority for holding that a receipt, although prima facie evidence of payment and settlement, may be set aside for weighty reasons and by clear and satisfactory proof.

Although general releases ordinarily are interpreted to exclude claims not contemplated by the parties in many jurisdictions and by statute in some, 76 C.J.S. Release §52, and cases cited thereunder, we are confronted in the present case with a provision including unknown claims from unsuspected injuries. Although no case in Pennsylvania in point has been referred to us, it would appear that the weight of authority in other jurisdictions find this inclusion to be ineffectual to cover unknown claims unless the surrounding circumstances indicate that *both* parties contemplated their inclusion. Regardless of how broad or inclusive they may have been drawn by legal ingenuity, the majority view holds that a release may be set aside if at the time of execution both parties were laboring under a mutual mistake as to the extent of the injuries suf-

fered by the releasor. The authorities are in conflict on this subject as evident by a collection of them in 71 A.L.R. 2d §13, among which there are no Pennsylvania cases except in Workmen's Compensation matters. However, the majority view appears to be that if there has been some overreaching of the plaintiff by the defendant or other circumstances from which it may be concluded that there was no intention that the *settlement* was to include payment for unknown injuries, such a release provision covering unknown injuries may be ignored. We believe this to be reasonable and adopt it.

We are of the opinion that there were sufficient circumstances of such nature present in this case to justify the action of the lower court in submitting this issue to the jury. This settlement was made nine days after the accident when the plaintiffs were concerned with the injuries to their children and in securing medical attention for them. The first contact by appellant's adjuster had been made immediately after the accident when wife-plaintiff was still suffering from nervous reaction which normally follows an accident of this nature. During this nine day period, on the instruction of the adjuster, appellees were also busily engaged in securing estimates of the damages to their automobile from three repairmen, and the settlement was made on the basis of and for the exact amount of the lowest estimate. At the settlement Mrs. Cady disclaimed any personal injuries and nothing was included as consideration for her release of a claim on unknown injuries. Furthermore, separate releases were obtained for the injuries to the two children, and the release under consideration was intended to cover the claim for the damages to the automobile. However, the adjuster admits that in order to protect his company and client from any possibility of a future claim by Mrs. Cady he included a clause for the release of such a

claim in the release covering Mr. Cady's property damage claim. He did not discuss with Mr. and Mrs. Cady the release of any claim for injuries to Mrs. Cady other than to inquire if she had been injured, nor did he pay any additional consideration for a release of possible unsuspected injuries.

The testimony of Mr. King on this point reads:

"Q. Do you take a Release when you know there isn't any bodily injury?

A. We certainly do.

Q. You knew there was none when this was taken?

A. That is correct, sir. At least I was advised there wasn't."

Mrs. Cady testified she was busy with the children when her husband and Mr. King were discussing the releases and was called into the room and told she had to sign because she was a parent of the children.

The circumstances, including the details as to when, where and how the releases were secured, and the inadequacy of the consideration, are all matters reflecting on the meeting of the minds of the parties and collectively support the jury's action in voiding the release insofar as the injuries to Mrs. Cady are concerned. This possible overreaching would also have the same effect on the claim of Mr. Cady based on his wife's injuries.

*Moyer v. Independent Oil Company, Inc.*, 401 Pa. 335, 164 A. 2d 552 (1960), cited by appellant, was an arm's length agreement executed by a corporation in favor of an insurance carrier without any attending circumstances requiring equitable consideration.

The second problem presented is the sufficiency of the evidence to show a causal connection between the accident and the injuries for which damages were awarded. The injury to Mrs. Cady was to one of her spinal discs, which frequently occurs on a whiplash from a rear-end impact, as this accident was. Dr.

22

Buck, the first to examine her stated, "Since I found no other cause for this disc, in my opinion I would say that the accident did cause the disc." Mr. Miklos, the neurosurgeon who performed an operation to correct the injury said, "It is my opinion that the trauma that Mrs. Cady sustained in November of '60 was instrumental in producing her symptoms and in producing the pathology for which I performed this cervical laminectomy."

We deem this evidence sufficient to establish the connection with reasonable certainty. *Menarde v. Philadelphia Transportation Company,* 376 Pa. 497, 103 A. 2d 681 (1954); *McCrosson v. Philadelphia Rapid Transit Co.,* 283 Pa. 492, 129 A. 568 (1925); *Fink v. Sheldon Axle & Spring Co.,* 270 Pa. 476, 113 A. 666 (1921).

Judgment affirmed.

WRIGHT, J., concurs in the result.