430 F.2d 325
 George R. EULO, Appellant,
v.
DEVAL AERODYNAMICS, INC., a Pennsylvania corporation, Deval Aerodynamics, Inc., a Delaware corporation, Josephine Russo, individually, and as Administratrix of the estate of Charles A. Russo, deceased; and John A. Baldinger.
 No. 17947.
 United States Court of Appeals, Third Circuit.
 Argued May 8, 1970.
 Decided August 7, 1970.
 Rehearing Denied September 25, 1970.
 
 Arnold R. Ginsburg, Philadelphia, Pa., for appellant.
 Jacob S. Richman, Richman & Richman, Philadelphia, Pa. (Stassen & Kephart, by John J. Speese, Philadelphia, Pa., on the brief), for appellees.
 Before FREEDMAN, SEITZ and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 George Eulo brought this diversity action against his former employer, DeVal Aerodynamics, Inc.[1] (DeVal), Charles Russo,[2] the former president of DeVal, and John Baldinger.[3] Eulo sought compensation allegedly owed him by DeVal for services rendered during the period between March 15, 1959 and May 9, 1961.[4] His primary theory in seeking compensation was that DeVal had orally agreed, through its president Russo, to pay him a 5 percent commission on all government contracts he secured, calculated on the gross price of the contracts.[5] Alternatively he claimed entitlement to quantum meruit recovery.
 
 
 2
 The case was tried before a jury which returned a $135,931.33 verdict on special interrogatories in favor of Eulo and against DeVal for quantum meruit damages and verdicts in favor of the Russo estate and DeVal on all other counts. Judgment was entered in favor of Eulo and against DeVal seven months after the verdict on September 23, 1968.[6] Shortly thereafter, DeVal filed a motion for judgment notwithstanding the verdict or alternatively a new trial. The district judge subsequently issued an opinion and order granting DeVal's motion for judgment n. o. v. and alternatively ordering a new trial in the event the judgment n. o. v. should be reversed. See Fed.R. Civ.P. 50(c). This appeal by Eulo followed.
 
 
 3
 Although the issues presented on appeal are not complex, the factual context out of which they arise is intricate and requires some explication. Prior to joining DeVal, Eulo's primary employment was as an independent manufacturer's representative. In this capacity he aided his clients primarily in their bidding on government contracts. In March 1959 Eulo met with Charles Russo, then president of DeVal. This meeting resulted in Eulo joining DeVal on a part-time basis for several months. He eventually gave up most outside activities and joined DeVal on a full-time basis. It is conceded that Eulo aided in securing and worked on government contracts totaling well over three million dollars for DeVal during the period involved in this suit. However, the precise agreement of employment between DeVal and Eulo was the key issue and was hotly contested at trial. Eulo claimed he had a 5 percent commission agreement with advances against commissions to cover day-to-day expenses. DeVal, in contrast, asserted that the "advances," amounting to $200 per week during most of the period in question, were Eulo's salary and that he was to be allowed a bonus only if the company were profitable.
 
 
 4
 In spite of the increased volume of business during Eulo's tenure with DeVal, DeVal did not show a profit. It went public in late 1960 and in early 1961 negotiations commenced for the sale of Russo's control block of stock to an outside group represented by Lomasney, Loving & Co. An agreement of sale was signed and Russo's shares were deposited in escrow. At the time of trial, however, the deal had not been consummated and the parties were involved in litigation in New York. A condition of the sale had been that Russo be replaced as president by Eulo. Eulo was elected president on May 9, 1961 and was subsequently reelected in November of the same year. However, on January 5, 1962 without any advance warning, the membership of the board of directors was substantially changed and Eulo's resignation was demanded and obtained. Following his abrupt dismissal Eulo brought this action.
 
 
 5
 During pretrial proceedings, the defendants moved for summary judgment alleging, inter alia, that Eulo's claims were absolutely barred by a release agreement dated May 9, 1961 which he had signed. The motion was denied without opinion. The defendants again invoked the release defense during the jury trial but the trial judge ruled that evidence concerning the proper interpretation of the agreement was irrelevant and would not be admitted. He stated: "I am declaring as a matter of law as far as this case is concerned the release whether it be regarded executory accord or what have you, does not constitute a defense. * * *" The defendants were thus barred from offering evidence of their affirmative defense of release. Subsequently in vacating the jury verdict and ordering that a judgment n. o. v. be entered in DeVal's favor, the district judge reversed his position on the alleged release agreement which he had earlier characterized as no defense. This agreement, which had been executed at the time of the purchase of DeVal by the Lomasney group, was embodied in a letter from Russo to Eulo, which was signed by both men and dated May 9, 1961. It reads as follows:
 
 
 6
 "May 9, 1961

 "George R. Eulo
 100 Third Avenue
 Haddon Heights, New Jersey
 
 
 7
 "Dear Sir:
 
 
 8
 "Reference is made to an agreement made this date between the undersigned and Lomasney, Loving & Co. for the sale and purchase of 100,000 shares of Carco Industries, Inc., common stock.
 
 
 9
 "Upon the payment of the sum of $500,000 to me, as provided therein, I agree to deliver to you 20,000 shares of Cargo common stock, free of charge and any obligation on your part for the said shares of stock, including the gift tax, if any.
 
 
 10
 "I agree to deliver the said 20,000 shares of Carco common stock to Grace National Bank of New York, as Escrow Agent, endorsed in blank, with instructions to deliver the said 20,000 shares of Carco common stock to you upon my receipt of the sum of $375,000, representing the balance of the purchase price payable under the aforesaid agreement.
 
 
 11
 "I further agree to deposit with the Escrow Agent sufficient funds for the documentary tax stamps to be affixed to the said 20,000 shares of Carco common stock, if any be required.
 
 
 12
 "I further agree to execute any other documents necessary or required to effectuate the terms herein.
 
 
 13
 "You agree to release any and all claims against Carco Industries, Inc., if any there be, as of this date.
 
 
 14
 Very truly yours,

 /s/ Charles A. Russo

 Charles A. Russo

 "Agreed and Accepted
 this 9th day of May 1961

 /s/ George R. Eulo

 George R. Eulo"
 
 
 15
 In reversing his trial ruling the judge said that "A careful reading of the letter of May 9, 1961, in light of the undisputed circumstances then prevailing, makes it clear that the parties undoubtedly intended the obligations created by that letter to replace whatever obligations were then owing the plaintiff by the defendant corporation." He concluded that in signing the letter Eulo "was granting a present release, in exchange for a conditional promise of substantial performance"; thus, he held the corporate obligation to Eulo had been extinguished and the jury's verdict awarding damages based on those obligations could not stand.
 
 
 16
 On appeal Eulo contends that the letter-agreement was not intended to be and cannot be construed as a present release or discharge of DeVal's obligations. He argues that at most the agreement evidences a conditional promise to release when and if Russo performed; that there has not been and cannot be timely performance at this date because the sale to Lomasney has not been consummated; and thus, he is free to rescind the agreement and pursue his claim for compensation against DeVal.
 
 
 17
 DeVal, on the other hand, contends that the district court properly granted judgment n. o. v. either because the language of the letter-agreement evidences an intent to immediately discharge DeVal from all prior obligations to Eulo regardless of when the Russo stock might be delivered to him or because the letter-agreement is an unbreached executory accord which bars Eulo's compensation claim against DeVal unless Russo breaches it.
 
 
 18
 We do not believe the letter of May 9, 1961 is exclusively susceptible of either interpretation. The clause "you agree to release" in the last paragraph of the letter, depending on the relevant circumstances, could mean either that Eulo was presently discharging all corporate obligations or that he would discharge them when and if performance from Russo was forthcoming. Neither party has submitted, nor has the court found, persuasive authority for the proposition that either interpretation is the only possibly correct one.
 
 
 19
 Moreover, we cannot express an opinion concerning the validity of either side's interpretation of the agreement or its theory on whether it has been breached based on the record made below, because the district court barred the parties from making a complete record on this issue. The release agreement was pleaded by DeVal as an affirmative defense. Thus, the defense bore the burden of establishing its existence and meaning. Yet early in the defense presentation the district court ruled out any further reference to the agreement or the circumstances surrounding it. The court ruled "as a matter of law" that the release constituted no defense. Thus, while some evidence appears in the record on this issue, neither side[7] was afforded a full opportunity to develop all the "operative usages and * * * all the circumstances prior to and contemporaneous with the making of the [letter-agreement]." Restatement of Contracts § 230 (1932). As a result of this exclusionary ruling, there are serious deficiencies in the present record. For example, there was an incomplete development of evidence concerning who drafted the agreement and in what capacity. Since we believe that either of the proffered interpretations of the contract may be the correct one, knowing in whose behalf the contract was drafted might provide valuable guidance in interpreting it. In addition, the record does not clearly establish where the contract was executed. Such a consideration might be relevant in determining under the Pennsylvania choice of law rules which jurisdiction's law will control the interpretation of the contract. We believe it was error to interpret this contract without allowing the parties to at least develop evidence concerning the circumstances prior to and contemporaneous with its making.
 
 
 20
 Moreover Eulo contends that, starting with the May 9 agreement, the Russos have engaged in a course of conduct constituting fraud on him. Although he does not articulate what relief he is entitled to because of this alleged fraud, we conclude that he should be permitted to present evidence relevant to this defense on remand to the district court. We say this because, whether Eulo seeks to show a breach of an executory accord or that the agreement can be avoided because of fraud involved in its making, he has never been afforded an opportunity to present his evidence. In these circumstances the district court's post trial ruling that there was no fraud cannot stand.
 
 
 21
 DeVal contends, however, that even if the letter-agreement is not a bar to Eulo's claim, it is entitled to judgment n. o. v. because there was no competent evidence to support the jury's determination of the amount of quantum meruit damages. While the record is somewhat thin on this damages issue, Eulo did testify throughout concerning his duties and what he believed they were worth. The fact that this testimony was in major part intended to demonstrate the existence of an express agreement does not derogate from its competence as regards quantum meruit damages. To hold as DeVal urges would require us, in effect, to invoke the ancient and wisely rejected rule that a party is not competent to testify in his own behalf. We decline to do so.
 
 
 22
 The judgment n. o. v. must be reversed and the case remanded to the district court. On remand the district judge will afford the parties an opportunity to offer evidence relevant to the task of interpreting the agreement and determining whether the agreement does present an absolute defense. In so doing, he will, of course, have to make reference to the applicable state law to determine what issues, if any, are appropriate for resolution by a jury.
 
 
 23
 The district court, as required by Fed.R. Civ.P. 50(c), ruled on DeVal's alternative motion for a new trial. It ordered a new trial limited to the issues between Eulo and DeVal relating to Eulo's claim for additional compensation for services rendered between March 15, 1959 and May 9, 1961. Since it is possible that the letter-agreement could be interpreted in a manner that would not bar Eulo's claims, in the interests of judicial economy, we are required to consider whether the alternative order of a new trial ought to be sustained.
 
 
 24
 The court advanced two reasons for its conclusion that a new trial was required. First, the judge thought that the language of his jury instructions and of the special interrogatories may have left the jury with the impression that, if they were to reject the contentions, advanced by each side concerning an express employment contract, they would be compelled to award Eulo a recovery based on quantum meruit. As we understand the district judge's position, he is apprehensive that the jury may have believed that if they were to find no contract of employment they were required to award Eulo damages beyond the amounts he had already received "on account" from DeVal. We have carefully analyzed the special interrogatories and the charge, and we conclude the trial judge's apprehensions are not supported by the record. Indeed, his charge on this point was an explicit and, we believe, a correct statement of the applicable principle of law.[8]
 
 
 25
 The second reason advanced in the district court opinion for ordering a new trial concerned some statements in the corporate defendant's 1960 prospectus. That prospectus listed the salaries of the management group including Eulo. Specifically, it stated that Eulo "may receive [a bonus] based on the company's sales performance which is not expected to exceed $40,000."[9] Eulo, of course, contended at trial that this was an inaccurate description of his employment agreement. In his opinion the trial judge, however, found as a matter of law that Eulo had acquiesced in the prospectus representation. For this reason, he concluded that any verdict awarded against the corporation which exceeded $40,000 would be against the weight of the evidence as well as against public policy as an impermissible reward to Eulo for a violation of the Securities Act of 1933. 15 U.S.C. §§ 77j, 77aa & 77l.
 
 
 26
 In our view the district court's finding that Eulo had acquiesced in the prospectus representation is erroneous. The evidence of acquiescence in the record is sparse. At best it posed a jury issue. The defendants, however, did not plead or argue a public policy defense based on acquiescence and the jury was not requested to make findings on this issue. In view of these factors, we conclude the district court committed error in resolving this issue against Eulo. Thus, it follows that this erroneous conclusion, which is essential to the public policy defense, cannot justify the order for a new trial on the ground that a jury verdict in excess of $40,000 would violate public policy.
 
 
 27
 In addition, to the extent the prospectus statement and Eulo's alleged acquiescence in it constitute evidence of an express employment agreement, they presented a jury issue. The jury's verdict clearly indicates they resolved this issue against DeVal. Thus, it follows the district court erred in relying on Eulo's alleged acquiescence in the prospectus representation as a reason for concluding that the verdict was against the weight of the evidence.
 
 
 28
 DeVal contends, however, that it is entitled to a new trial on a ground not adverted to by the district court in its opinion. It contends the district court impermissibly restricted its cross-examination of Eulo concerning an article about "5-percenters." Eulo, however, had not read the article and was not mentioned in it. Moreover, DeVal concedes that this cross-examination was intended to elicit proof that Eulo's services as a manufacturer's representative were of little value. DeVal was afforded ample opportunity to cross-examine Eulo concerning the value of his services. The exclusion of cross-examination on this article was not erroneous.
 
 
 29
 DeVal also contends that it was erroneously barred from developing evidence that Eulo acquiesced in misrepresentations in bids which DeVal submitted to government agencies. The bid forms apparently require a representation that no part-time commission employees worked on the bid. Eulo, however, admitted knowledge of the representations in bids he worked on prior to becoming a full-time employee of DeVal. Any further questions would have been repetitive and were properly barred.
 
 
 30
 DeVal also contends it is entitled to a new trial because the district court refused its suggested charge concerning the alleged illegality of Eulo's contract with DeVal. DeVal has not supplied the court with a copy of its requested charge. Nor does it appear in the original record. Nor has DeVal pointed to any place in the record where it objected to the judge's charge in the manner required by Fed.R. Civ.P. 51. On this record, we conclude DeVal's contention cannot be sustained.
 
 
 31
 DeVal also contends that the jury erroneously awarded Eulo compensation for contracts on which he did not work. There is no competent evidence in the record to support this contention and, thus, we find no merit in it.
 
 
 32
 Finally, DeVal urges the court erred in not charging the jury on its theory that the May 9, 1961 agreement was an executory accord which at the time of trial had not been breached. For the reasons given in the portion of this opinion dealing with the May 9 agreement we decline to rule on this contention. DeVal will be afforded an opportunity to make its argument on this issue to the district court. Whether a new trial is required on this basis will be for that court's determination.
 
 
 33
 The judgment of the district court will be reversed to the extent it grants judgment n. o. v. and alternatively orders a new trial in favor of DeVal. If on remand it is ultimately determined that the instrument is not a bar to Eulo's action, the jury verdict based on Eulo's quantum meruit claim should be reinstated. The judgment entered on the jury verdicts in favor of the remaining defendants will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 DeVal Aerodynamics, Inc. is the name of two separate corporations — a Delaware holding company and a Pennsylvania manufacturer. They were formerly known as Carco Industries, Inc. We shall refer to both corporations in this opinion simply as DeVal. No party challenges the propriety of treating them as a single entity as the district court did
 
 
 [2]
 Russo died prior to the trial of this case. His widow was substituted as administratrix of his estate
 
 
 [3]
 Baldinger became president of DeVal upon Eulo's resignation in 1962. Since his dismissal as a defendant was not challenged below, we will not have cause to refer to him further
 
 
 [4]
 Eulo also sought damages for wrongful termination of his employment from DeVal. This claim was decided against Eulo by the jury and the verdict was not challenged below. Moreover, there is virtually no argument presented on appeal as to this claim by Eulo. Thus, we need not consider it further
 
 
 [5]
 In addition Eulo sought to hold Russo personally liable on this alleged oral agreement or alternatively for a breach of warranty of authority to bind the corporation if the oral agreement were held void for want of authority. The jury decided this claim against Eulo. The verdict for Russo's estate was not challenged below, nor is there more than a cursory argument offered on appeal. Thus, we need not consider the claim further
 
 
 [6]
 In view of the express language of Fed. R.Civ.P. 58, we cannot understand the delay in the entry of judgment
 
 
 [7]
 The potential for prejudice to Eulo is especially serious. The release was part of DeVal's affirmative defense. It follows that Eulo's evidence would normally have been offered in his rebuttal case. Thus, the court's ruling effectively barred Eulo from making any record on this issue
 
 
 [8]
 In explaining to the jury the available options the district judge said:
 "Now, this is based on what I discussed with you a while ago, this idea that if there was in fact no agreement, what was the fair and reasonable value of his services. Was the fair and reasonable value of his services anything over and above what he actually received? If so, what was the amount?" Transcript 1049.
 
 
 [9]
 October 13, 1960 Prospectus of Carco Industries, Inc. at page 9