**In the Matter of F. H. McGRAW & COMPANY, Bankrupt.**

**Appeal of FELLOWS CORPORATION, Claimant.**

**No. 71–1900.**

United States Court of Appeals, Third Circuit.

Submitted Nov. 17, 1972.

Decided Feb. 9, 1973.

---

John W. Fawcett, III, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellant.

Nathan Lavine, Philadelphia, Pa., for appellee.

Before ALDISERT, ADAMS, and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal from the district court's affirmance of an order of the referee in bankruptcy disallowing appellant's proof of claim, presents the question whether the referee erred in concluding that his order constituted a binding release of a subsequent claim.

F. H. McGraw & Co., general contractor for the construction of a five million dollar manufacturing plant for Fellows Corp. in Springfield, Vermont, filed a Chapter XI Petition in Bankruptcy and a receiver was appointed. In order to prevent job delay and weather damage, Fellows elected to complete the construction itself by assuming the responsibility for paying subcontractors and materi-almen. After its counsel obtained the receiver's consent to such an arrangement, the receiver suggested that the parties utilize a petition and order form similar to an arrangement previously entered into between the receiver and another corporation. After examination of the submitted form, Fellows consented to the form of the petition and order, and authorized the receiver to proceed. The receiver made the presentation to the referee by petition and proposed order.

The petition and order approved by the referee provided for waiver of certain notice provisions of the original construction contract and payment of materialmen and subcontractors by Fellows. Additionally, the order contained the following paragraph not contained in the model order agreed to by Fellows:

AND IT IS FURTHER ORDERED AND DECREED that Philip F. Newman, Receiver herein, shall not be liable for any claim for deficiency if the costs of completion of the contract exceed the balance of the contract price.

This litigation centers around this additional language. At the time the order was entered, both Fellows and the receiver anticipated that the contract would be completed at a profit. However, according to Fellows' proof of claim, the cost of completion exceeded the contract price by $1,092,251.01, an amount which Fellows seeks to assert as an unsecured claim in the bankruptcy proceedings.

Interpreting the above quoted portion of his order, the referee ruled that "[t]he Receiver was relieved of liability by the agreement, waived his contractual rights and Fellows is estopped to deny the plain meaning of the release."[1] Although it is uncontradict-

[1] The referee ruled that "the plain meaning of the release" relieved the receiver of liability. In so ruling the referee made it clear that he was interpreting his own order without reference to the intention or expectancies of the parties. Counsel for Fellows was asked what the provisions meant to him when he read the order.

After questioning the relevance of counsel's interpretation, the referee admitted the interpretation with the observation: "It doesn't make that much difference, I still have the determination. . . ." Although counsel for the receiver objected late to the admission of the interpretation placed upon the order by counsel for Fel-

ed that the parties did not discuss the language in question prior to its inclusion in the referee's order, and that it was included therein only by the ex parte action of the receiver, the referee ruled that "the only reasonable meaning that can be given to the release language is that the release inured to the benefit of the Trustee following adjudication." The district court affirmed.

■ Central to our review are certain elementary principles of the law of contracts. It is hornbook law that a release covers only such matters as were within the contemplation of the parties at the time the contract was entered into. There being no express contract before

him, the referee found one implied in fact: the inaction by Fellows after it had notice of the language introduced ex parte by the receiver constituted an acquiescence, and thereby an acceptance, resulting in a valid contract. Although we agree that Fellows is estopped to attack the technical validity of the provision because it was not timely objected to, we reject the referee's interpretation of that provision.

■ We are not persuaded that there is only "one reasonable meaning that can be given to the release language." First, we compare the language of the disputed provision with other provisions contained therein.[2]  Throughout the or-

---

lows as irrelevant, the referee permitted the witness to continue, saying, "It is the same principle. I am still going to make the determination, not the witness." This colloquy indicates that although the interpretation of Fellows' counsel was received as evidence, it was not considered by the referee in his interpretation of the order and thus "[i]t is the same" as excluding the interpretation.

We cannot agree with the interpretation placed upon the provision by the referee. If the provision is to be construed as a release, we view as relevant the circumstances leading up to the release. Eulo v. Deval Aerodynamics, Inc., 430 F.2d 325, 329 (3d Cir. 1970).

2.                    ORDER
AND NOW, to wit, this 21 day of January, 1969, upon consideration of the foregoing petition and affidavit, the joinder of the Debtor, good cause having been shown and upon motion of Samuel Marx, Esq., and Adelman & Levine, Esqs., counsel for the Receiver, It is
ORDERED AND DECREED that PHILIP F. NEWMAN, Receiver herein, be and he is hereby authorized to allow The Fellows Gear Shaper Company to pay any subcontractors and material suppliers of F. H. McGraw & Co., the Debtor, directly so as to assure their continuance on the job pursuant to contract entered into between The Fellows Gear Shaper Company and the Debtor dated August 9, 1968, in the amount of $5,165,-851.00, and to
    (a) Authorize continued reimbursable payment by The Fellows Gear Shaper Company to McGraw "on site" employees, until termination of the construction contract.

(b) Authorize direct payments by The Fellows Gear Shaper Company to all subcontractors and material suppliers of McGraw on the Fellows facility up to the time of termination of the construction contract between McGraw and Fellows.
    (c) Authorize Fellows to assume all rights and to make such payments as Fellows deems desirable to subcontractors and material suppliers of amounts due from McGraw under any subcontracts or purchase orders in effect at the time of termination of the construction contract.
    (d) Authorize assignment by McGraw to Fellows, or party or parties designated by Fellows, of all outstanding subcontracts, purchase orders, and agreements entered into in connection with construction of the Fellows facility.
    (e) Authorize the waiver by McGraw of the seven (7) day notice period required under the contract termination provisions of the construction contract between Fellows and McGraw.
    (f) Authorize the waiver by McGraw of the thirty (30) day notice period required under the default provisions of the Agreement between McGraw and Fellows dated July 29, 1968.
AND IT IS FURTHER ORDERED AND DECREED that Philip F. Newman, Receiver herein, shall not be liable for any claim for deficiency if the costs of completion of the contract exceed the balance of the contract price.
                s/ THOMAS J. CURTIN
                    Referee in Bankruptcy

der reference is continuously and repeatedly made to "McGraw." The receiver was empowered to "Authorize . . . payment . . . to McGraw . . . employees;" to "Authorize direct payments . . . to all subcontractors and material suppliers of McGraw;" to "Authorize assignment by McGraw . . . ;" to "Authorize . . . waiver[s] by McGraw," etc. By comparison, in that portion of the order in dispute, the name "McGraw" is not used; instead it relates, "Philip F. Newman, Receiver herein, shall not be liable" for the cost of completion of the contract should the cost of completion exceed the contract price. Any ambiguity resulting from this deliberate choice of language will be interpreted most strongly against the party who wrote it, in this case, the receiver. Williston, Selections on Contracts, Student Edition, § 621; Restatement, Contracts, § 236.

We find such an ambiguity. The language has the capacity of being interpreted as releasing the named receiver, and thereafter a trustee, from accepting any claim as a debt having priority as "actual and necessary costs and expenses of preserving the estate subsequent to filing the petition." 11 U.S.C. § 104(a)(1). In re Connecticut Motor Lines, Inc., 336 F.2d 96 (3d Cir. 1964). While we do not agree with an alternative interpretation of the provision as releasing the receiver from personal liability only, we do note that in In re I. J. Knight Realty Corp., 370 F.2d 624 (3d Cir. 1967), rev'd on other grounds, sub nom., Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), we indicated that a receiver could be surcharged for excessive costs. In interpreting the provision, the referee could have considered whether the language could have been so interpreted.

Under the circumstances herein presented—where there is no evidence of prior discussion between Fellows and the receiver as to the inclusion of this language, let alone the drastic consequences flowing therefrom now urged upon this court—we are unwilling to attribute to this language the full force and effect of a bar to claims not matured or accrued at the time of the writing.

Although posited in another context, we are impressed by the approach of the Pennsylvania Supreme Court, speaking through Justice Roberts, in Restifo v. McDonald, 424 Pa. 644, 230 A.2d 199, 201 (1967):

A long line of Pennsylvania cases has held that a release covers only those matters which may be fairly said to have been within the contemplation of the parties when the release was given. See, e. g., Wenger v. Ziegler, 424 Pa. 268, 226 A.2d 653 (1967); Brill's Estate, 337 Pa. 525, 12 A.2d 50 (1940); Flaccus v. Wood, 260 Pa. 161, 103 A. 549 (1918); Shepley v. Lytle, 6 Watts 500 (1837); General Mills, Inc. v. Snavely, 203 Pa. Super. 162, 199 A.2d 540 (1964); Cockcroft v. Metropolitan Life Ins. Co., 125 Pa.Super. 293, 189 A. 687 (1937). Accordingly, the general words of the release will not be construed so as to bar the enforcement of a claim which has not accrued at the date of the release. See Henry Shenk Co. v. City of Erie, 352 Pa. 481, 43 A.2d 99 (1945); Zurich General Acc. & Liab. Ins. Co. v. Klein, 181 Pa.Super. 48, 55–60, 121 A.2d 893, 896 (1956).

Cady v. Mitchell, 208 Pa.Super. 16, 220 A.2d 373 (1966), is a recent illustration of the rule mandating strict construction of a release so as to avoid the ever present possibility that the releasor may be overreached. Cf. Wenger v. Ziegler, supra; Henry Shenk Co. v. City of Erie, supra; compare Linda Coal & Supply Co. v. Tasa Coal Co., 416 Pa. 97, 100, 204 A. 2d 451, 453 (1964).

This court cannot be said to differ with Professor Williston's suggestion that "[w]herever a bargain is intended to operate in the future as an exemption from liability the courts apply more stringent rules of interpretation. . . ." Williston, supra, § 1826. See, e. g., Gimbel Brothers Inc. v. Vanderherchen,

Inc., 468 F.2d 597 (3d Cir. 1972); Davis v. United States Gypsum Co., 451 F.2d 659 (3d Cir. 1971); Neville Chemical Co. v. Union Carbide Corp., 422 F.2d 1205, 1216 (3d Cir. 1970). Moreover, it cannot be said that we would follow a rule contrary to that of Pennsylvania which mandates strict construction of a release.

This is not to suggest, however, that where there is specific, as distinguished from general, language, in an instrument, or under circumstances where the intent of parties is clearly demonstrated, that we would not give full force and effect to a release which operates as an absolute bar to recovery. We hold merely that under the circumstances presented to the referee, he should have found the language to be ambiguous. And, recognizing the principle that ambiguous language will be resolved against the author thereof, and mindful of the desirability of strict construction of a release from claims not yet accrued or matured, the referee should have allowed Fellows' claim as a general, unsecured creditor.

The order of the district court, affirming disallowance of the claim, will be vacated and the proceedings remanded to the district court, with a direction of a further remand to the referee with other direction that the claim of Fellows be honored as a general, unsecured creditor.

ADAMS, Circuit Judge (dissenting).

I respectfully dissent from the conclusion reached by the majority in this case because it is based, I believe, on an unrealistic appraisal of the situation.

The Fellows Gear Shaper Company (Fellows), appellant here, had contracted with F. H. McGraw & Co., general contractors, for the erection of a building in Springfield, Vermont. Upon McGraw's entry into receivership, Fellows became concerned about the possibility of delays and sought an arrangement which would permit Fellows to complete the building. An agreement was entered into between Fellows and the re-

ceiver which would achieve this end. The agreement was made effective by an order of the referee in bankruptcy. This order, embodying the agreement, provided that in exchange for a release by the receiver, Fellows could immediately undertake completion of the building, would not be liable to the assertions by the debtor of its right to complete construction, and that the debtor would assign to Fellows its interest in contracts with its laborers and materialmen. The order further provided as follows:

> "And it is further ordered and decreed that Philip F. Newman, Esq., receiver herein, shall not be liable for any claim for deficiency if the costs of completion of the contract exceed the balance of the contract price."

At the time this order was issued, pursuant to the agreement entered into between Fellows and the receiver for McGraw, it was assumed by both that Fellows' cost to complete the building would not exceed the contract price. However, the cost of building did, in fact, ultimately surpass the contract price. Fellows now seeks to assert this excess amount as a claim against the bankrupt company. The receiver, who by the time of this proceeding had been elected trustee, on the other hand, contends that the agreement and release preclude Fellows from asserting such a claim.

Fellows argued to the referee, to the district court, and to this Court, that the disputed release provision should not be deemed to release McGraw from McGraw's liability under the construction contract for any costs over the contract price. The arguments by Fellows have been, at various times, that (1) the provision was inserted into the order unilaterally, (2) the provision was intended to release only the receiver from personal liability and not to release McGraw, and (3) the provision is ambiguous and, therefore, to be interpreted against the released party. The referee rejected Fellows' contentions and held (1) that because Fellows had knowledge of the

clause in question and had neither sought review nor modification of the order it was bound thereby and could not now claim that it had been unilaterally inserted; (2) that it could reasonably be believed that the release was intended for the benefit not only of Philip F. Newman, Receiver, but for the debtor, McGraw as well; and (3) that there was only one reasonable interpretation that could be given to the release language.

The district court, holding that the findings of the referee must be accepted unless clearly erroneous, affirmed the findings.

The standard to be applied by this Court in reviewing an order of a referee, affirmed by the district court, has been stated to be:

> "If the debt is ascertained to be not duly proved, or to be without lawful existence, the referee shall disallow the claim. His findings, if based on conflicting evidence, and particularly if involving questions of credibility, should not be disturbed upon review by the district judge unless clearly erroneous. Upon appeal to the circuit court of appeals this presumption of correctness is strengthened where the district judge has approved such findings, and they will be accepted unless a mistake is clearly shown." 3 Collier on Bankruptcy, § 57.14(5) pp. 219–20 (14th ed.).

Nevertheless, the majority in this case reversed the district court's affirmance of the referee's ruling. Instead, the majority held that "under the circumstances presented to the referee, he should have found the language to be ambiguous. And, recognizing the principle that ambiguous language will be resolved against the author thereof, and mindful of the desirability of strict construction of a release from claims not yet accrued or matured, [he] should have allowed Fellows' claim as a general unsecured creditor."

I differ from both the approach taken by the majority and the result reached. It would appear that the majority has reviewed the referee's findings not from the point of view that the findings ought not be overturned unless no reasonable basis existed, but rather as if they were viewing the case *de novo*.

Moreover, business realities would indicate that the result reached by the referee is an eminently reasonable interpretation of the provision of the order, or release, in question. An experienced receiver, participating in a transaction of the kind involved here, would be concerned not only with protecting himself from personal liability but more importantly, with protecting the debtor company from any potential claims. Indeed, the majority seemingly acknowledges that such is a reasonable interpretation, when they state that they do not agree with an interpretation of the provision as releasing the receiver from personal liability only. In addition, a failure by the receiver to secure such protection for the debtor while obtaining such protection for himself might raise serious questions regarding the receiver's administration of the debtor's estate, because it would appear that his concern with his own liability was greater than his concern for the interests of the creditors.

The referee, a most experienced official, extremely conversant with bankruptcy proceedings, orders and forms, did not find the ambiguity claimed by the majority. Rather, he found that the provision in question was intended to release both the receiver and the debtor, McGraw, from all claims. That order was affirmed by the district court and in turn, I would affirm the district court.