**Gealt v. Kubiak (No. 2)**

*Albert M. Hankin,* for plaintiff.

*Francis E. Marshall* and *Francis E. Shields,* for defendants.

CAVANAUGH, J., July 13, 1973.—This matter comes before the court for resolution of a single legal issue. Plaintiff's complaint in trespass alleges medical malpractice in the treatment by defendant physicians of injuries sustained by plaintiff in an automobile accident occurring on July 26, 1966. Defendant physicians filed amended answers containing new matter contending that a release executed by plaintiff in favor of the driver of the vehicle in the July 26, 1966, incident precluded plaintiff from recovery against the present defendants on the basis of injuries incurred in the course of treatment of the original injuries sustained in July 1966. By stipulation of the parties, it is presently the function of this court, therefore, to determine the conclusory effect of the release in question as between plaintiff and defendant physicians where the proposed action stems from claimed negligent aggravation of injuries arising out of an automobile accident with the releasee.

Plaintiff apparently sustained several fractures, including a fracture of the right leg, as a result of the accident. She was, therefore, subsequently admitted to Nazareth Hospital where she underwent treatment by defendants, Dr. Michael F. Joyce and Dr. Richard A. Cautilli. Defendants' association was in the nature of a partnership. Pursuant to surgery for the purpose of performing an open reduction of the fracture, a wound infection together with osteomyelitis developed at the site of the incision for which plaintiff was allegedly locally administered an antibiotic drug

known as neomycin, in conjunction with an orally administered antibiotic, chloromycetin, by Dr. Joyce. Having remained in the hospital until October of 1966 for treatment, the infection subsequently again became apparent necessitating further hospitalization and treatment. Plaintiff, therefore, was a second time admitted to Nazareth Hospital on February 2, 1967, where she remained until February 17, 1967. Osteomyelitis of the right femur was again diagnosed for which plaintiff underwent further surgery performed by Dr. Cautilli on February 3, 1967. Subsequent to the surgery, Dr. Cautilli a second time administered a neomycin solution locally, notwithstanding the fact that prior to February 3, 1967, no audiometric test had been performed on plaintiff.

On June 22, 1967, the infection again evidenced itself for which plaintiff was administered neomycin on June 23, 1967, together with erythromycin, an oral antibiotic, by Dr. Joyce. No audiometric test had been rendered up until that time.

The release in question was executed by plaintiff to the driver of the other vehicle, while represented by other counsel, on April 18, 1967, for a consideration of $10,000. The hearing loss apparently manifested itself to plaintiff in June of 1967 and plaintiff allegedly informed defendants of her hearing problem on August 7, 1967.

Defendants argue that the holding in Thompson v. Fox, 326 Pa. 209 (1937), mandates the conclusion that the release poses a complete bar to plaintiff's suit against defendants. In Thompson, plaintiff had sustained a fractured hip upon being struck by an automobile driven by one Taylor in November 1932 for which plaintiff committed himself to defendant physician's care. Some six months later, plaintiff instituted suit against Taylor as a result of Taylor's negligence

in operating the automobile, and, in July of 1934, effected a settlement and general release of Taylor of all claims, demands or causes of action arising out of the accident. Finally, in March of 1935, plaintiff instituted suit against defendant physician, claiming that defendant carelessly and improperly treated the fracture and did not set it in accordance with surgical and medical standards. The law enunciated in Thompson, defendants argue, is controlling here. In essence, Thompson held that where a person effects a settlement for injuries with the tortfeasor who caused the accident in which he sustained the original injury, he cannot thereafter recover against a physician for negligent aggravation of the injuries prior to the time of the settlement.

And, further:

"For the same injury, however, an injured party can have but one satisfaction and the receipt of such satisfaction, either as payment of a judgment recovered or consideration for a release executed by him, from a person liable for such injury, necessarily works a release of all others liable for the same injury and prevents any further proceeding against them. (citations omitted) This is true even though it was intended, or the release expressly stipulated, that the other wrongdoers should not thereby be released. (citations omitted)

"Nor is it material whether the tort-feasors involved committed a joint tort or concurrent or successive torts, because the principle which underlies the rule is that the injured person is given a legal remedy only to obtain compensation for the damage done to him, and when that compensation has been received from any of the wrongdoers, his right to further remedy is at an end. Of course, if a tort-feasor is liable only for a part of the damage, and another tort-feasor only for

another part, a release of one does not release the other; but where both are liable for the same damage, no matter upon what theory their respective liabilities are predicated, the rule applies."

We believe the instant case to be distinguishable from Thompson. That case plainly deals with joint liability of tortfeasors for the same injury, or aggravation of injuries by a successive tortfeasor. Here, we have a situation involving a tort by a successive tortfeasor resulting in the creation of an entirely new, as opposed to an aggravated, injury. Simply stated, Thompson involved a defendant physician's negligent aggravation of a pre-existing hip fracture initially caused by the original tortfeasor whereas the instant case involves the defendant physician's alleged negligent creating of hearing loss which bore no apparent direct physical relationship to the original leg fracture occasioned by the negligence of the original tortfeasor during the auto accident. Though the law regarding the effect of a plaintiff's and original tortfeasor's settlement on a successive tortfeasor responsible for aggravation of the injuries is clearly enunciated in Thompson, we feel the present factual situation, i.e., the creation of an entirely new and independent injury, is not embodied within the Thompson philosophy, nor could it reasonably have been meant to be. Though research has produced no Pennsylvania case on point, it appears that numerous jurisdictions have considered the negligent creation of new injury to be an exception to the general rule that a release given an original tortfeasor serves as a bar to recovery against a negligent physician responsible for aggravation of the injuries. See, e.g. 39 A.L.R. 3d 260, 270 and the cases cited therein. The philosophy in such cases seems to be as stated in Piedmont Hospital v. Truitt, 48 Ga. App. 232 (1933), 172 S. E. 237:

"If the occurrence of the intervening cause might reasonably have been anticipated, it would not interrupt the connection between the original cause and the injury, . . . but where the intervening cause was of such a nature that it could not have been reasonably foreseen to be the result of the prior negligence, it becomes the proximate cause, even though the injury would not have occurred except for such original negligence."

We, therefore, feel that to apply the Thompson philosophy in the instant case would work an injustice. Rather, it is our opinion that here, the proper solution is that followed in other jurisdictions, as outlined above. In the case of negligent treatment occasioning new injury, we fall into the basic category of principles governing the law of release.

"A release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties when it was given and the words used in a release ought never to be extended beyond the consideration; otherwise it would make a release to the parties what they never intended or contemplated. . .

" [T] he majority view appears to be that if there has been some overreaching of the plaintiff by the defendant or other circumstances from which it may be concluded that there was no intention that the settlement was to include payment for unknown injuries, such a release provision covering unknown injuries may be ignored. We believe this to be reasonable and adopt it": Cady v. Mitchell, 208 Pa. Superior Ct. 16 (1966).

Though the release in question was general and may have been intended to cover unknown injuries, we conclude that the hearing loss sustained by plaintiff was a contingency never contemplated by the parties and must not, therefore, preclude this plaintiff from

pursuing an action against defendant physicians or other persons.

The legal memorandum bearing upon the issue of release submitted by defendant Upjohn Company has been thoroughly considered in the resolution of this issue.