**INTERMILO, INC.**

v.

**I.P. ENTERPRISES, INC.**

v.

**MILOSUN; Milouot, an Israeli Corporation; Intermili, Inc.; Israel Frumer, Third–Party Defendants**

**Israel Frumer, Appellant.**

No. 92–5396.

United States Court of Appeals, Third Circuit.

Argued March 18, 1993.

Decided March 28, 1994.

David L. Harris, Allen P. Langjahr (argued), Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for appellee I.P. Enterprises, Inc.

Jay D. Fischer (argued), Mitchel J. Shornick, Fischbein, Badillo, Wagner & Itzler, Englewood Cliffs, NJ, for appellant.

Before: STAPLETON, ROTH and LEWIS, Circuit Judges.

## OPINION OF THE COURT

ROTH, Circuit Judge.

Poultry has been the subject of extensive discussion in American jurisprudence. *See, e.g., Frigaliment Importing Co. v. B.N.S. International Sales Corp.,* 190 F.Supp. 116, 117 (S.D.N.Y.1960) ("The issue is, what is chicken?"). In the present case, the litigants did not ask the court to define the bird but instead to analyze the business arrangements for its sale. Plaintiff, Intermilo, was an importer of frozen pre-cooked kosher poultry products from Israel. Intermilo sued defendant I.P. Enterprises, Inc., ("I.P."), one of its U.S. distributors, for the price of goods delivered to and accepted by I.P. I.P. counterclaimed against Intermilo and added to its counterclaim individual defendant Israel Frumer and corporate defendants Intermili, Milosun, and Milouot, alleging wrongful termination of a distributorship contract, breach of contract, civil conspiracy and tortious interference with prospective economic advantage. A jury trial was held, and on February 21, 1992, the jury returned a verdict against Intermilo on its collection claims and in favor of I.P. on its counterclaims in the amount of $1,245,302.

Following the verdict, the district court considered the parties' motions for judgment as a matter of law. It granted a portion of Intermilo's collection claim; it refused to dismiss I.P.'s counterclaims as a matter of law but reduced the award of compensatory damages as being duplicative; it offset the compensatory award on the counterclaims by the amount I.P. owed on the collection claims; and it reduced the punitive damages to those awarded on the tortious interference cause of action. This resulted in a total verdict in favor of I.P. of $199,981.86 in compensatory damages jointly and severally against Intermilo, Milosun and Frumer and of $100,000 in punitive damages with Intermilo and Frumer individually liable for $50,000. Israel Frumer filed the only appeal.

We conclude that the district court applied an improper standard to evaluate the jury's punitive damage award and we will reverse the award of punitive damages against appellant, Israel Frumer. We will affirm the remaining portions of the judgment of the district court.

### I.

Milouot is an Israeli company that markets agricultural products produced on member kibbutzim or farming communities. Milosun is the poultry division of Milouot. Intermilo imported Milouot's frozen kosher poultry products under the "Mili" brand name. In March 1986, I.P. began distributing Mili products on a non-exclusive basis. On November 25, 1987, Isaac Perry, president of I.P., entered into an "exclusive" distributorship agreement with Intermilo and Milosun to sell certain Mili frozen pre-cooked poultry items in New York and most of New Jersey. This agreement allowed I.P. sixty days from the date of delivery to pay for goods and required Intermilo to send I.P. a notice allowing thirty days to cure any defects. Upon a failure to cure, Intermilo could terminate the agreement on thirty days' notice.

The relationship among Milosun, Intermilo and I.P. apparently proceeded rather harmoniously until January 1988. At that time,

Israel Frumer, an Israeli-born businessman living in the United States since 1964, began renting office space at Intermilo's offices in Hackensack, New Jersey. Shortly thereafter, Frumer began to discuss Intermilo's business with its President, Nimrod Vizansky. Starting in March 1988, Frumer made inquiries regarding the Mili product and sent a written proposal of general interest to Yonatan Melamed, the general manager of Milouot. Frumer followed this with a visit to Israel in April 1988.

During this same period, Isaac Perry visited officers of Rokeach, a company which had a nationwide distribution system for kosher products but did not then deal in poultry products. Perry delivered to Rokeach price quotations from I.P. and samples of its products. Under its distributorship agreement with Intermilo, I.P. was required to obtain Intermilo's approval for the private label arrangement I.P. proposed to Rokeach.

As a result of his interest in Intermilo, Frumer accompanied Vizansky on visits to prior and potential distributors and customers. These visits included a meeting with Harold Weiss of Rokeach, who testified that Vizansky and Frumer offered him an opportunity exclusively to represent Mili products in the same area covered by I.P. under I.P.'s exclusive distributorship agreement with Intermilo. Intermilo subsequently sold a substantial amount of product to Rokeach.

The jury was presented with testimony that Frumer obtained I.P.'s price list, calculated its mark-up, and became interested in buying a partnership in Intermilo. Frumer travelled to Israel and allegedly offered $400,000 for a partnership interest in Intermilo. Additionally, Frumer participated with Vizansky in the Javits Center's kosher food show and allegedly collected names of potential customers located within the New York/New Jersey area serviced by I.P. Although Frumer and Vizansky testified that they gathered the names to determine only whether Perry was developing the exclusive market set forth in the agreement, the list was never turned over to I.P.

Frumer became Intermilo's business manager in August 1988. In September 1988, Intermilo claimed that I.P. was in breach of its contract and terminated the agreement. In January 1989, Intermilo was closed. Three months later, Milouot and Milosun chose Frumer from among five candidates to distribute Mili products, imported directly from Israel, in the New York/New Jersey area. Frumer operated this distributorship through his corporation, Intermili.

As a result of this series of events, Intermilo sued I.P. for the price of goods delivered and accepted by I.P. In turn, I.P. counterclaimed against Intermilo, and additional counterclaim defendants Frumer, Intermili, Milosun, and Milouot, alleging wrongful termination of a distributorship contract, breach of contract, civil conspiracy and tortious interference with prospective economic advantage.

## II.

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over this diversity action. Appellate jurisdiction is conferred by 28 U.S.C. § 1291 over the final order of the district court.

■ This Court's review of a district court's decision on a motion for judgment as a matter of law is plenary. *See Bhaya v. Westinghouse Elec. Corp.*, 832 F.2d 258, 259 (3d Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989) (motion for judgment notwithstanding the verdict). We must apply the same standard as the trial court. *See Berndt v. Kaiser Aluminum & Chem. Sales, Inc.*, 789 F.2d 253 (3d Cir.1986). The legal foundation for the factfinder's verdict is reviewed de novo while factual findings are reviewed to "determine whether the evidence and justifiable inferences most favorable to the prevailing party afford any rational basis for the verdict." *See Bhaya*, 832 F.2d at 259.

## III.

■ As a preliminary matter, we have carefully considered and rejected I.P.'s argument that appellant, Israel Frumer, failed sufficiently to specify the grounds upon which his motion for judgment as a matter of law was based. We find no error in the

district court's conclusion that Frumer's request for jury instructions satisfied the requirements of Fed.R.Civ.P. 50(a)(2) so that the court properly proceeded to consideration of Frumer's substantive claims. *Intermilo, Inc., v. I.P. Enterprises, Inc.*, No. 88–4313, slip op. at 7–8 (D.N.J. June 22, 1992).

Furthermore, we have carefully considered and rejected Frumer's claims that there was insufficient evidence for a rational jury to find that Frumer was involved in an illicit civil conspiracy and that Frumer was liable for tortious interference with prospective economic advantage. Our review of the record found ample evidence to uphold the jury's determination and we conclude that there was no error in the district court's disposition of these claims.

## IV.

■ Turning now to Frumer's claim that the district court improperly upheld the jury's award of punitive damages based upon the claim of tortious interference with prospective economic advantage,[1] we agree with Frumer that there is insufficient evidence in the record to support an award of punitive damages under New Jersey law and therefore reverse the district court's disposition of this claim. The purpose of punitive damages under New Jersey law is "to express the community's disapproval of outrageous conduct—the 'admonitory' function. . . . They are awarded to punish the wrongdoer, and to deter both the wrongdoer and others from similar conduct in the future." *Fischer v. Johns–Manville Corp.*, 103 N.J. 643, 512 A.2d 466, 473 (1986). Under New Jersey law, "[t]o warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard of the rights of another." *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 477 A.2d 1224, 1230 (1984).

The New Jersey Supreme Court has expanded upon this standard stating that "[t]he key to the right to punitive damages is the wrongfulness of the intentional act. The right to award exemplary damages primarily rests upon the single ground—wrongful motive.'" *Id.* (quoting *Dreimuller v. Rogow*, 93 N.J.L. 1, 107 A. 144 (1919)). Moreover, under New Jersey law,

> Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or "malice," or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct may be called willful or wanton. Lacking this element, mere negligence, however "gross," is generally not held to be enough.

*Nappe*, 477 A.2d at 1231 (quoting William Prosser, Handbook on the Law of Torts § 2, at 9–10 (2d ed. 1955)); *see also Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 196 (3d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993) (quoting this passage as a standard for punitive damages in a New Jersey case based upon tortious interference with a contract); *Sandler v. Lawn–A–Mat Chemical & Equipment Corp.*, 141 N.J.Super. 437, 358 A.2d 805, 811, *cert. denied*, 71 N.J. 503, 366 A.2d 658 (1976) ("Something more than the mere commission of the tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or 'malice.'").

■ Frumer argues that, because the record includes no evidence that his conduct was in any way based upon an "evil motive" or "wanton recklessness," the imposition of punitive damages against him is improper. We agree. The district court upheld the jury's award of punitive damages on the tortious interference with prospective economic advantage claim, stating only that "[h]aving found that Frumer and Intermilo committed the underlying act of tortious interference, it was reasonable for the jury to conclude that

---

1. We note that the jury initially awarded additional punitive damages based upon contract claims. The district court reduced the award of punitive damages to the amount awarded based upon I.P.'s tortious interference claim because punitive damages based upon contract claims are contrary to New Jersey law. *See Intermilo*, slip op. at 30–31.

Intermilo and Frumer's conduct was 'wantonly reckless or malicious.'" *Intermilo*, slip op. at 32. This analysis, however, eliminated the requirement for punitive damages under New Jersey law that conduct more outrageous than that comprising the tort at issue be proven. Our review of the record has uncovered no evidence of such outrageous conduct or of an "evil-motive" underlying Israel Frumer's actions. The record discloses that Frumer's interference with I.P.'s prospective relations with Rokeach and other food distributors was motivated primarily by Frumer's own business interests, rather than by some desire to harm I.P. or its employees.

In an earlier case involving a claim for punitive damages for tortious interference with business under New Jersey law, this Court explained:

> The district court found that, "in mailing the brochure, defendant [Chrysler] was motivated only by a desire to promote its own business, and not by malice, ill-will, or evil motive." We think such a finding negates the necessary malice or fraudulent motive. The fact that we previously characterized the tort as "intentional" did not mandate the granting of punitive damages.

*Buono Sales, Inc. v. Chrysler Motors Corp.*, 449 F.2d 715, 723 (3d Cir.1971). *See Zippertubing Co. v. Teleflex, Inc.*, 757 F.2d 1401, 1414 (3d Cir.1985) ("We need not decide whether, from the very nature of the tort, its elements would in any event support punitive damages, since there was ample additional evidence in this case from which malice could be inferred."). Similarly, the lack of evidence of malice or evil motive in the present case makes the award of punitive damages against Frumer improper. The record here contains no evidence that Israel Frumer deliberately violated any duty of confidentiality owed to I.P. or lied to I.P.'s officials. There simply is not enough evidence that Frumer's conduct was sufficiently malicious or outrageous to justify an award of punitive damages under New Jersey law.

■ Moreover, the district court's instructions to the jury on punitive damages may have confused the jury on the elements required under New Jersey law for an award of punitive damages. The court instructed the jury on tortious interference with prospective economic advantage as follows:

> It is your duty to decide whether or not I.P. has proven by a preponderance of the evidence that Intermilo or Mr. Frumer or both interfered with I.P.'s prospective economic advantage.
>
> To prevail on this claim, I.P. must show by a preponderance of the evidence the following five elements:
>
> First, that I.P. possessed a reasonable expectation of economic advantage or benefit.
>
> Second, that either Intermilo or Mr. Frumer or both had knowledge of that expectation of economic advantage.
>
> Third, that Intermilo or Mr. Frumer or both wrongfully and without justification interfered with I.P.'s expectation.
>
> Fourth, that in the absence of the wrongful act of either Intermilo or Mr. Frumer or both, it is reasonably probable that I.P. would have realized its economic advantage or benefit.
>
> Fifth, that I.P. sustained damages as a result of this activity.

Frumer Appendix at 144–45.

Shortly thereafter, the district court instructed the jury on the requirements for an award of punitive damages in relation to all four of I.P.'s counterclaims:

> In addition, to compensatory damages, I.P. is seeking punitive damages for each of its claims. Therefore, if you award compensatory damages to I.P., you should consider whether or not I.P. is also entitled to punitive damages.
>
> Punitive damages are only awarded in exceptional cases as a punishment to the liable party and as a deterrence to others who might follow the liable party's example.
>
> You may award punitive damages to I.P. if you determine that the acts of a liable party were committed with: One, actual malice, that is an evil intent or with intent to harm another or with ... wanton or wilful disregard of the rights of another. In other words, with the knowledge that it was probable that another would be

harmed and with wreckless [sic] indifference to those consequences.

*Id.* at 150–51.

Following this instruction, the jury might have found the same conduct fulfilled the required "wrongful act" element of tortious interference with prospective economic advantage and the "wanton and wilful disregard of the rights of another" element of an award of punitive damages. The district court's failure to clarify to the jury the distinction between the required elements of these two different aspects of the verdict and the legal standard which requires that more is required to demonstrate punitive damages, when considered along with the paucity of evidence in the record to support any finding which goes beyond the wrongful act necessary for the claimant to establish as an element of tortious interference with prospective economic advantage, leads us to the conclusion that the award of punitive damages in this case neither conforms to New Jersey law nor is supported by the evidence of record.

### V.

For the foregoing reasons, we will reverse the district court's decision affirming the jury's award of punitive damages against Israel Frumer. We will affirm the district court's decision in all other respects.