**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4645
_____

GRAND UNION SUPERMARKETS OF THE
VIRGIN ISLANDS, INC; RED APPLE GROUP, INC.

v.

LOCKHART REALTY INC, f/k/a/ H.E. LOCKHART MANAGEMENT, INC.,

Appellant

_____

No. 11-1963
_____

GRAND UNION SUPERMARKETS OF THE
VIRGIN ISLANDS, INC.; RED APPLE GROUP, INC.

v.

LOCKHART REALTY,  INC., f/k/a H.E. LOCKHART MANAGEMENT, INC.,

Appellant

_____

No. 12-1021
_____

GRAND UNION SUPERMARKETS OF THE VIRGIN ISLANDS, INC.;
RED APPLE GROUP, INC.

v.

LOCKHART REALTY INC.,
f/k/a H.E. LOCKHART MANAGEMENT, Inc.,

Appellant

_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 3-01-cv-00044)
District Judge:  Honorable Juan R. Sanchez
_____

Argued May 11, 2012

Before:   CHAGARES, JORDAN, and COWEN, <u>Circuit Judges</u>.

(Filed: August 15, 2012 )

Gregory H. Hodges, Esquire (Argued)
Justin K. Holcombe, Esquire
Michael C. Quinn, Esquire
Dudley, Topper & Feuerzeig
1000 Frederiksberg Gade
P.O. Box 756
St. Thomas, VI 00804
        <u>Counsel for Appellant</u>

Henry F. Reichner, Esquire (Argued)
Reed Smith
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103

Karin A. Bentz, Esquire
Law Offices of Karin A. Bentz
18 Dronningens Gade
Suite 8
St. Thomas, VI 00802
        <u>Counsel for Appellees</u>

_____

OPINION
_____

CHAGARES, Circuit Judge.

Lockhart Realty Inc., formerly H.E. Lockhart Management, ("Lockhart") appeals from the District Court's judgment in favor of, and award of prejudgment interest and attorneys' fees to, the plaintiff, Grand Union Supermarkets of the Virgin Islands, Inc. ("Grand Union").[1] For the reasons discussed below, we will reverse.

I.

Because we write solely for the parties, we recount only the facts that are relevant to our disposition. This case, and three related cases involving the same parties, arose out of the destruction of a commercial structure in St. Thomas owned by Lockhart ("the Building") during Hurricane Marilyn on September 15, 1995. At the time, Lockhart was leasing the Building to Grand Union. Pursuant to its lease from Lockhart for the Building ("the Lease"), Grand Union was required to insure the Building and to rebuild promptly at its own expense if the Building was damaged. When Hurricane Marilyn struck, Grand Union had self-insured the property but had not taken out a separate insurance policy.

After Hurricane Marilyn destroyed the Building, Grand Union brought suit in the Virgin Islands Territorial Court in 1996 against Lockhart seeking, inter alia, a declaratory judgment that the Lease was still in force ("Grand Union I"). In addition, Grand Union purchased retroactive insurance coverage from National Union Fire Insurance Co.

_____

[1] Grand Union is a wholly owned subsidiary of Red Apple Group, Inc. ("Red Apple"). In turn, Red Apple is owned by John Castimatidis. Red Apple was originally a plaintiff in this lawsuit but voluntarily dismissed its claims on the first day of trial. Hereinafter, Grand Union, Red Apple, and John Castimatidis will be referred to collectively as "Grand Union."

3

("National Union") for the period of October 1, 1994 through October 1, 1995. Because the Building had already been destroyed at the time the policy was purchased, National Union insisted that Grand Union execute a side agreement providing that it would make no claims for losses to the Building relating to Hurricane Marilyn and would indemnify National Union in the event that the insurance company was compelled to make a payment to Lockhart. The insurance policy, therefore, was essentially purchased so that Grand Union could prove that it had fulfilled the terms of the Lease. Notwithstanding these efforts, in 1997, Lockhart brought suit in the Virgin Islands Territorial Court against National Union and Grand Union for breach of the Lease, seeking $2.7 million in damages for Grand Union's failure to rebuild the Building ("Lockhart I").

The case at bar arose out of the settlement of Grand Union I and Lockhart I. Although National Union and Grand Union originally shared counsel in Lockhart I, on December 16, 1998, National Union notified Grand Union in a letter that it would retain its own attorney, negotiate with Lockhart separately, and seek indemnification from Grand Union should it be required to pay Lockhart. In relevant part, National Union's letter stated:

> We expect to enforce National Union's rights under the letter of undertaking and the indemnity agreement against Red Apple/Grand Union. Under those undertakings Red Apple/Grand Union has no claim to any insurance proceeds and will be required to indemnify and hold harmless National Union from any payments which it may be forced to make to [Lockhart] . . . .
>
> This is to advise you that we intend to deal directly with [Lockhart] in regard to claims it may have against National Union's policy proceeds, regardless of whether any further action is undertaken by [Lockhart] against National Union in the territorial court of the Virgin Islands. . . .

> In summary, National Union hereby disassociates itself from all previous actions taken by Red Apple/Grand Union in connection with its relationship with [Lockhart] and/or the territorial court of the Virgin Islands. We reject any claim that Red Apple/Grand Union may make to insurance proceeds, and advise you that we will take steps to satisfy the claims [Lockhart] has against policy proceeds, and we will enforce all aspects of the indemnity agreement entered into by Red Apple Group and Grand Union on February 15, 1996.

Joint Appendix ("JA") 1143-44. In addition to that clear disassociation, National Union never paid any legal fees to Grand Union's counsel.

Accordingly, Lockhart and National Union began settlement negotiations and, on March 1, 1999, entered into an agreement by which National Union agreed to pay Lockhart $2.7 million to reconstruct the Building and Lockhart released all claims against National Union ("National Union-Lockhart Settlement"). Neither Lockhart nor National Union immediately informed Grand Union of their separate settlement.

Meanwhile, Grand Union and Lockhart engaged in separate settlement negotiations and, on March 4, 1999, entered into a "Mediated Settlement Agreement" to settle Grand Union I and Lockhart I. The Mediated Settlement Agreement provided that (1) mutual releases would be exchanged, (2) Grand Union would pay Lockhart $35,000 and transfer to Lockhart its unused architectural plans for the Building, and (3) Grand Union would surrender its claim to the five years remaining on the Lease. The parties executed a formal release the following day in which Grand Union released all claims against Lockhart and Lockhart released all claims against both Grand Union and National Union.

5

Days after the Mediated Settlement Agreement, National Union brought suit against Grand Union in New York ("New York Litigation"), seeking indemnification of the $2.7 million that it paid to Lockhart pursuant to the National Union-Lockhart Settlement. In settlement of that suit, on April 30, 2004, Grand Union paid $1.5 million to National Union in exchange for a release of all of National Union's claims it.

While National Union and Grand Union were settling the New York Litigation, on February 26, 2001, Grand Union filed this lawsuit against Lockhart. In its complaint, Grand Union alleged fraud, unjust enrichment, and breach of the covenant of good faith and fair dealing. Grand Union's claims are based on Lockhart's failure to disclose the National Union-Lockhart Settlement to Grand Union during their settlement negotiations. Because Lockhart had already released all claims against National Union before March 4, 1999, Lockhart's release of its claims against National Union in the Mediated Settlement Agreement was worthless. Thus, Grand Union maintains that Lockhart was unjustly enriched because it obtained Grand Union's consideration in the Mediated Settlement Agreement in exchange for a release that was worth less than Grand Union understood it to be. Grand Union claims that it was deceived because it settled under the mistaken belief that National Union would be included in the settlement and, as such, National Union would not turn to Grand Union for indemnification.

On January 3, 2005, the District Court dismissed Grand Union's fraud and good faith claims. The District Court later denied Lockhart's motion for summary judgment on the unjust enrichment claim, however, because "a reasonable juror could determine that Lockhart did not disclose to Grand Union that it had agreed to release its claims

6

against National Union so that Grand Union would confer valuable consideration upon it in exchange for the dismissal of those very same claims." JA 5. On December 13, 2010, a jury found in favor of Grand Union on the unjust enrichment claim and awarded it $2.7 million in restitution. The District Court thereafter denied Lockhart's renewed motion for judgment as a matter of law or, in the alternative, for a new trial, and awarded Grand Union prejudgment interest and attorneys' fees. Lockhart timely filed this appeal.

II.

The District Court of the Virgin Islands had diversity jurisdiction over this case pursuant to 48 U.S.C. § 1612(a) and 28 U.S.C. § 1332. See Edwards v. HOVENSA, LLC, 497 F.3d 355, 357 (3d Cir. 2007). We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

We review de novo the District Court's denials of Lockhart's motion for summary judgment and renewed motion for judgment as a matter of law. Stratechuk v. Bd. of Educ., South Orange-Maplewood Sch. Dist., 587 F.3d 597, 603 (3d Cir. 2009); Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 211 (3d Cir. 2009). Summary judgment should be rendered "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making this determination, we must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Stratechuk, 587 F.3d at 603 (quotation marks omitted).

There is a similarly high standard for overturning a jury verdict on a renewed motion for judgment as a matter of law. Legal questions are reviewed de novo and the

7

jury's factual findings are reviewed to "determine whether the evidence and justifiable inferences most favorable to the prevailing party afford any rational basis for the verdict." Intermilo, Inc. v. I.P. Enters., Inc., 19 F.3d 890, 892 (3d Cir. 1994). A court may grant a renewed motion for judgment as a matter of law "only if 'the record is critically deficient of the minimum quantum of evidence' to sustain the verdict." Acumed LLC, 561 F.3d at 211 (quoting Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)). This Court must decide "whether the evidence is sufficient to sustain liability." Id. (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)). In doing so, the Court "may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." Id. (quoting Lightning Lube, Inc., 4 F.3d at 1166).

### III.

Lockhart appeals the District Court's denial of (1) its motion to dismiss or for summary judgment on the unjust enrichment claim; (2) its renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59(a)(1)(A); and (3) its motion to strike Grand Union's jury demand. Lockhart also maintains that Grand Union failed to prove damages and challenges the award of attorneys' fees and prejudgment interest.

Lockhart first argues that the District Court should have dismissed Grand Union's unjust enrichment claim because it was dependant on proof of the same facts as the fraud claim that the District Court dismissed as issue precluded. Because we agree, we will reverse the judgment of the District Court.

8

The District Court dismissed Grand Union's fraud claim in this action on January 3, 2005. In the order of dismissal, the District Court held that Grand Union was collaterally estopped from arguing that Lockhart's failure to disclose its settlement with National Union was fraudulent because Grand Union had raised the same argument in the New York Litigation and it had been rejected by the court. In the New York Litigation, defendant Grand Union alleged in a counterclaim that National Union had committed fraud by intentionally failing "to disclose material aspects of its negotiation and settlement of the Lockhart claim to Red Apple/Grand Union." JA 54. The New York Supreme Court analyzed Grand Union's counterclaim as a fraudulent or tortious nondisclosure cause of action. Such a claim in New York requires a showing that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiffs thereby, (3) the plaintiffs reasonably relied upon the representation, and (4) the plaintiffs suffered damage as a result of their reliance." Swersky v. Dreyer & Traub, 219 A.D.2d 321, 326 (N.Y. App. Div. 1996) (citation omitted). In addition, the plaintiff must prove that the defendant had a duty to disclose material information. Id. A duty to disclose arises where there is a fiduciary relationship between the parties. Id. at 327. In addition, "[u]nder the 'special facts' doctrine, a duty to disclose arises where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." Id. (quotation marks and citation omitted).

The New York Supreme Court found that National Union had no duty to disclose, and Grand Union had no actionable claim for fraud, because there was no fiduciary relationship between National Union and Grand Union, and National Union did not have

9

"'superior knowledge of the essential facts,'" which would have rendered the transaction without disclosure "'inherently unfair.'" JA 54 (quoting <u>Swersky</u>, 219 A.D.2d at 327). National Union did not have superior knowledge because it had advised Grand Union of its intention to deal directly with Lockhart "in regard to claims it may have against National Union's policy proceeds" on December 16, 1998, months before the Mediated Settlement Agreement. <u>Id.</u> at 55. Accordingly, Grand Union was on notice that National Union would settle separately with Lockhart, and Grand Union did not have an actionable fraud claim based on fraudulent nondisclosure.

Although Grand Union's fraud claim in the <u>New York Litigation</u> was against National Union rather than Lockhart, the District Court nonetheless held that Grand Union's fraud claim against Lockhart in this litigation was issue precluded because it depended on proof of the exact same facts as the fraud claim in the <u>New York Litigation</u>. In both cases, Grand Union would have had to prove that National Union or Lockhart had knowledge of essential facts that rendered the Mediated Settlement Agreement inherently unfair.[2] The question we decide now is whether the dismissal of the fraud claim compelled dismissal of the unjust enrichment claim as well.

Issue preclusion is appropriately invoked if:

(1) the previous determination was necessary to the decision, (2) the identical issue was previously litigated, (3) the issue was decided in a decision that [was] final, valid, and on the merits, and (4) the party that is being precluded from relitigating the issue was adequately represented in the previous action.

_____

[2] Grand Union also argues that the District Court erred in dismissing the fraud claim but Grand Union did not appeal that decision and that issue is not before this Court.

10

Gonzalez v. AMR, 549 F.3d 219, 223 (3d Cir. 2008) (quoting Harrilal v. Blackwood, No. CIV. 619/1998, 2001 WL 1769735, at *4 (V.I. Terr. Ct. Dec. 13, 2001)). The relevant elements of tortious nondisclosure in the Virgin Islands are the same as in New York, which are set forth above.[3]

No Virgin Islands statute provides an unjust enrichment cause of action. Instead, pursuant to 1 V.I.C. § 4, "[t]he rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands . . . in the absence of local laws to the contrary." See also Hefferman v. U.S.Virgin Islands, No. 2009/0087, 2010 WL 4942160, at *2 (D.V.I. Nov. 30, 2010). Under the Restatement

---

[3] The Restatement (Second) of Torts § 551(1), which is applied in the Virgin Islands, defines tortious nondisclosure as follows:

> One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

In turn, a duty to disclose exists where, inter alia,

> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
>
>     . . . .
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Id. § 551(2).

11

(Third) of Restitution § 1 (2011), "[a] person who is unjustly enriched at the expense of another is subject to liability in restitution."  The Restatement (Third) of Restitution § 13(1) specifies that the mistake that leads to unjust enrichment can be induced by either fraud or material misrepresentation:

> A transfer induced by fraud or material misrepresentation is subject to rescission and restitution. The transferee is liable in restitution as necessary to avoid unjust enrichment.

The comments explain that if the transfer is induced by an "innocent misrepresentation," it "is subject to rescission only if the misrepresentation was material." Id. cmt c.[4]  Thus, to prevail on an unjust enrichment claim based on a mistake of fact, a plaintiff must prove (1) that a mistake of fact caused the plaintiff to confer a benefit upon another and (2) that the mistake was due to either fraud or an innocent but material misrepresentation.  In addition, the court must conclude that equity requires the defendant to return the unjust benefit to the plaintiff.  Cruse v. Callwood, D.C. Civ. App. Nos. 2006-71 & 2006-76, 2010 WL 438173, at *6 (D.V.I. Feb. 3, 2010).

---

[4]  Similarly, the Restatement (First) of Restitution § 28 (1937) provided that:

> A person who has paid money to another because of a mistake of fact and who does not obtain what he expected in return is entitled to restitution from the other if the mistake was induced:
>
>> (a) by the fraud of the payee, or
>> (b) by his innocent and material misrepresentation . . . .

Because the Restatement (Third) of Restitution was published after the District Court denied Lockhart's renewed motion for judgment as a matter of law, we mention the relevant provisions from both the First and Third Restatements here.  As applied to this case, there is no material difference between them, however.

12

Not all of their elements are identical, but tortious nondisclosure and unjust enrichment claims share the element of material mistake of fact. In addition, where there is no fiduciary relationship, both causes of action require a showing that the defendant's misstatement or omission rendered the transaction unfair or unjust. Although the New York Supreme Court did not state it directly, it held that there was no material mistake of fact here because National Union's knowledge of the National Union-Lockhart Settlement was not "superior knowledge" of an "essential fact" that rendered the transaction inherently unfair. Thus, with respect to the material mistake element of an unjust enrichment claim, Grand Union's claim is barred by issue preclusion by the Court's finding in the New York Litigation. As such, the District Court erred in declining to dismiss the unjust enrichment claim.[5]

Our decision in Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912 (3d Cir. 1999), is instructive. In Steamfitters, the unjust enrichment and fraud claims both failed because they shared the element of proximate causation of damages and the plaintiffs failed to establish that element. Because the plaintiff could not prove its fraud claim, we declined to afford it a roundabout route to recovery by way of unjust enrichment. We explained:

> In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched). . . . We can

---

[5] The other requirements for issue preclusion are also satisfied. The New York Litigation was a final decision on the merits, the dismissal of the fraud claim was essential to the adjudication of Grand Union's counterclaim, and Grand Union, which was a party to the New York Litigation, was adequately represented and had a full and fair opportunity to litigate the issue in that case.

13

find no justification for permitting plaintiffs to proceed on their unjust enrichment claim once we have determined that the District Court properly dismissed the traditional tort claims because of the remoteness of plaintiffs' injuries from defendants' wrongdoing.

Id. at 936-37; see also Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000) (adopting the declaration in Steamfitters that "[i]n the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim.").[6]

Likewise, in this case, Grand Union's fraud and unjust enrichment claims both require proof that Lockhart's nondisclosure was material, caused Grand Union to enter into the Mediated Settlement Agreement, and rendered the settlement unfair or unjust. Because the New York Supreme Court decided those questions in the negative, we conclude that the unjust enrichment claim should have been dismissed on the same basis as the fraud claim.

Moreover, Grand Union's choice to pursue the unjust enrichment claim on a tort-based theory of nondisclosure meant that its fraud and unjust enrichment claims were one and the same. It is generally understood that tortious nondisclosure is a fraud claim based on an omission rather than an affirmative misstatement. See Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 612-13 (3d Cir. 1995) (discussing claim for tortious nondisclosure as a "fraudulent omission claim"); Lightning Lube, Inc., 4 F.3d at 1185 (same); Navarro v. Gov't of the V.I., 18 V.I. 473, 476-77 (D.V.I. 1981) ("[I]n

---

[6] Similarly, in Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co., 631 F.3d 436, 448 (7th Cir. 2011), the Court of Appeals for the Seventh Circuit upheld the District Court's holding that the dismissal of plaintiff's fraud claim "took the unjust enrichment claim with it" because plaintiff failed to separately allege facts supporting the unjust enrichment claim.

certain circumstances nondisclosure is treated as a fraudulent misrepresentation[.]");

Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999) ("The tort of intentional non-disclosure has the same elements as intentional misrepresentation except in the case of intentional non-disclosure, the party intentionally conceals a material fact rather than making an affirmative misrepresentation." (quotation marks omitted)).  Thus, by instructing the jury on tortious nondisclosure, the District Court conflated the fraud and unjust enrichment claims and asked the jury to decide a question that was already answered in the New York Litigation.  This confusion illustrates that the fraud and unjust enrichment claims are inseparable and that the unjust enrichment claim was an impermissible attempt at a second bite at the apple.

We hold, therefore, that Grand Union's unjust enrichment claim was barred by issue preclusion and should have been dismissed.  Because we hold in favor of Lockhart on the basis of issue preclusion, we need not reach the other arguments that Lockhart raised in this appeal.

IV.

In accordance with the foregoing, we will reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.

*Grand Union Supermarkets of the Virgin Islands, Inc. and Red Apple Group, Inc. v. Lockhart Realty, Inc f/k/a H.E. Lockhart Management, Inc.,* Nos. 11-1963, 11-4645, 12-1021

JORDAN, Circuit Judge, concurring.

I agree with the Majority's conclusion that we should vacate the District Court's December 30, 2011 judgment in favor of Grand Union on Grand Union's unjust enrichment claim. However, I write separately because I believe that the District Court should have granted Lockhart's cross-motion to dismiss Grand Union's unjust enrichment claim based on the parties' agreement to release all claims arising out of the Lease.

As the Majority opinion correctly notes, Grand Union and Lockhart executed a formal release on March 5, 1999 (the "Release"). The Release provides, in pertinent part:

> Grand Union hereby releases, waives, and forever discharges any and all claims for which it and its respective agents, affiliates, parent companies, subsidiaries, representatives, attorneys, officers, directors, shareholders, employees, predecessors, successors, and assigns, … may have or ever had or will have against [Lockhart] and its present and former agents, employees, officers, directors, shareholders, attorneys, predecessors, successors, and assigns … arising out of or related to the Lease, including any and all claims that were asserted or could have been asserted in that certain action captioned *Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Management, Inc.*, Civil No. 50/1996, Territorial Court of the Virgin Islands, and any claims that were asserted or could have been asserted in that certain action captioned *H.E. Lockhart Management, Inc. v. National Union Fire Insurance Company of Pittsburgh, Inc., Red Apple Group and Grand Union Supermarket of the Virgin Islands, Inc.*, Civil No. 909/1998, Territorial Court of the Virgin Islands.

(Joint App. at 511.) Lockhart argues that the Release unambiguously bars all claims arising out of or related to the Lease, and, therefore, Grand Union's unjust enrichment claim fails.[1]  I agree.

The Verified Complaint avers that "[Lockhart] fraudulently induced Grand Union to give up the *Lease* by failing to disclose that it had already settled the very same claims with [National Union], whom [Lockhart] knew was going to seek indemnification from Grand Union and Red Apple for the $2.7 million it paid to [Lockhart]." (*Id.* at 71 (emphasis added).)  It also alleges that "[Lockhart] – which already had been paid $2.7 million from National Union – received the benefit it bargained for (the *Lease*), but Grand Union did not receive the benefit it bargained for." (*Id.* (emphasis added).)  Those

---

[1] "The rules of interpretation that apply to contracts generally apply also to writings that purport to be releases."  Restatement (Second) of Contracts § 284 cmt. c.  In interpreting a contract, we attempt to ascertain the parties' intent as "objectively manifested by them" and, to "make a preliminary inquiry as to whether the contract is ambiguous." *Sunshine Shopping Ctr., Inc. v. Kmart Corp.*, 85 F. Supp. 2d 537, 540 (D.V.I. 2000).  We apply the "plain meaning rule," which "assumes that the intent of the parties to [the contract] is embodied in the writing itself." *Id.* (internal quotation marks omitted) (quoting *Hullet v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994)).  Moreover, we interpret "[w]ords and other conduct … in the light of all the circumstances," and give great weight to "the principal purpose of the parties" if it is ascertainable.  Restatement (Second) of Contracts § 202(1).

The party pleading a release as an affirmative defense bears "the burden of establishing its existence and meaning." *Eulo v. Deval Aerodynamics, Inc.*, 430 F.2d 325, 328 (3d Cir. 1970).  Once the party satisfies its burden, the burden then shifts to the party seeking to invalidate the release to prove that the release is unenforceable. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 274 (3d Cir. 2004) ("The burden of proving a generally applicable contract defense lies with the party challenging the contract provision."); *cf. Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) ("The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability.").

2

allegations powerfully suggest that Grand Union's unjust enrichment claim against

Lockhart relates to, and hence is barred by, the Release.

Grand Union, however, argues that the Release does not foreclose its unjust

enrichment claim because the Release is void on public policy grounds. To support that

argument, it relies on the Restatement (Second) of Contracts § 195, which provides that

even if a contract unambiguously exempts a party from liability, it is unenforceable on

public policy grounds if it attempts to "exempt[] a party from tort liability for harm

caused intentionally or recklessly." Restatement (Second) of Contracts § 195(1). The

problem with that argument, however, is that the jury made no factual findings on the

issue of whether Lockhart acted intentionally or recklessly when it did not disclose its

settlement with National Union. And the lack of findings on that issue is no surprise

because the District Court did not instruct the jury to address it.[2] (*See* Joint App. at 107-

149 (jury instructions).) Instead, the District Court instructed the jury that, in order for

Grand Union to prevail on its unjust enrichment claim, the jury must find that "(1)

[Lockhart] was enriched; (2) [Lockhart's] enrichment was at [Grand Union's] expense;

---

[2] None of the District Court's instructions asked the jury to decide whether Lockhart acted intentionally or recklessly when it did not disclose its settlement with National Union to Grand Union. In addition, there is no evidence in the appellate record demonstrating that Grand Union ever asked the District Court for such an instruction – indeed, Grand Union's proposed jury instructions contain no such request and Grand Union has not directed us to any evidence that it requested a special interrogatory. Thus, because the jury made no finding of fact on the issue of whether Lockhart intentionally or recklessly failed to disclose its agreement with National Union, and Grand Union provides us with no indication that it asked the District Court to charge the jury on that issue, we are left to conclude that Grand Union did not attempt to, and cannot, satisfy its burden of demonstrating that the Release is unenforceable.

3

and (3) [t]he circumstances were such that in fairness and good conscience [Lockhart] should return the value of the enrichment to [Grand Union]." (*Id.* at 128.)  Based on that instruction, the jury could find in favor of Grand Union without finding that Lockhart acted either intentionally or recklessly.

Therefore, because the plain language of the Release bars Grand Union's unjust enrichment claim, and because the jury made no finding of fact that bears on the issue of whether the Release is void for public policy reasons, I would vacate the District Court's December 6, 2010 order denying Lockhart's cross-motion to dismiss and would reverse the judgment in Grand Union's favor.[3]

---

[3] None of the other arguments Grand Union raises have merit.  First, Grand Union asserts that the Release is void because, under our precedent, "'a release … will not be construed to bar a claim which had not accrued at the date of its execution or a claim which was not known to the party giving the release.'"  (Appellees' Br. at 48 (quoting *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys.*, 247 F.3d 44, 58 (3d Cir. 2001) (citing *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 896 (3d Cir. 1975) (applying Pennsylvania law))).)  But that rule does not apply, when, as here, the plain language of a contract demonstrates that the parties intended to bar all unknown, future claims.  *See Three Rivers Motors Co.*, 522 at 896 (noting that "where … parties manifest an intent to settle all accounts, [a] release will be given full effect even as to unknown claims").

Second, Grand Union claims that its unjust enrichment claim "'arises out of and relates to' the negotiation of the release and settlement of the litigation between the parties and not the Lease itself."  (Appellees' Br. at 45-46.)  That argument is also unpersuasive because, as Lockhart correctly notes in its Reply Brief, "Grand Union's entire case hinged on its argument that Grand Union was entitled to restitution for its surrender of the *Lease* to [Lockhart], which, Castimatidis testified, was worth $2.75 million."  (Appellant's Reply Br. at 24 (original emphasis removed and new emphasis added).)  Under these conditions, there is no question that Grand Union's unjust enrichment claim "relates to" the Lease.

Third, Grand Union asserts that the Release was the product of fraud by Lockhart. (*See* Appellees' Br. at 42-43 ("A releaser such as Grand Union can always set up fraud … as grounds to ignore a release that would otherwise bar its suit."); *id.* at 43 (noting that "[w]here there has been a mutual mistake or unilateral mistake by one party and fraud by

4

the other party, the party executing a general release as a result of such mistake may sue to reform the release or may avoid the … release … ." (citation and internal quotation marks omitted)); *id.* at 44 ("Grand Union presented evidence tending to establish … fraud by [Lockhart] … .").)  But again, that argument is unavailing because the jury did not consider whether Lockhart's conduct was intentional or fraudulent.

In the end, Grand Union is left with what it bargained for:  the waiver of all claims that arise out of or relate to the Lease.  And, it is that bargain that precludes it from succeeding on its unjust enrichment claim.