*249 OPINION
CHAGARES, Circuit Judge.
Lockhart Realty Inc., formerly H.E. Lockhart Management, (“Lockhart”) appeals from the District Court’s judgment in favor of, and award of prejudgment interest and attorneys’ fees to, the plaintiff, Grand Union Supermarkets of the Virgin Islands, Inc. (“Grand Union”).[1] For the reasons discussed below, we will reverse.
I.
Because we write solely for the parties, we recount only the facts that are relevant to our disposition. This case, and three related cases involving the same parties, arose out of the destruction of a commercial structure in St. Thomas owned by Lockhart (“the Building”) during Hurricane Marilyn on September 15, 1995. At the time, Lockhart was leasing the Building to Grand Union. Pursuant to its lease from Lockhart for the Building (“the Lease”), Grand Union was required to insure the Building and to rebuild promptly at its own expense if the Building was damaged. When Hurricane Marilyn struck, Grand Union had self-insured the property but had not taken out a separate insurance policy.
After Hurricane Marilyn destroyed the Building, Grand Union brought suit in the Virgin Islands Territorial Court in 1996 against Lockhart seeking, inter alia, a declaratory judgment that the Lease was still in force {“Grand Union I ”). In addition, Grand Union purchased retroactive insurance coverage from National Union Fire Insurance Co. (“National Union”) for the period of October 1, 1994 through October 1, 1995. Because the Building had already been destroyed at the time the policy was purchased, National Union insisted that Grand Union execute a side agreement providing that it would make no claims for losses to the Building relating to Hurricane Marilyn and would indemnify National Union in the event that the insurance company was compelled to make a payment to Lockhart. The insurance policy, therefore, was essentially purchased so that Grand Union could prove that it had fulfilled the terms of the Lease. Notwithstanding these efforts, in 1997, Lockhart brought suit in the Virgin Islands Territorial Court against National Union and Grand Union for breach of the Lease, seeking $2.7 million in damages for Grand Union’s failure to rebuild the Building {“Lockhart I ”).
The case at bar arose out of the settlement of Grand Union I and Lockhart I. Although National Union and Grand Union originally shared counsel in Lockhart I, on December 16, 1998, National Union notified Grand Union in a letter that it would retain its own attorney, negotiate with Lockhart separately, and seek indemnification from Grand Union should it be required to pay Lockhart. In relevant part, National Union’s letter stated:
We expect to enforce National Union’s rights under the letter of undertaking and the indemnity agreement against Red Apple/Grand Union. Under those undertakings Red Apple/Grand Union has no claim to any insurance proceeds and will be required to indemnify and hold harmless National Union from any payments which it may be forced to make to [Lockhart]....
This is to advise you that we intend to deal directly with [Lockhart] in regard to claims it may have against National *250 Union’s policy proceeds, regardless of whether any further action is undertaken by [Lockhart] against National Union in the territorial court of the Virgin Islands....
In summary, National Union hereby disassociates itself from all previous actions taken by Red Apple/Grand Union in connection with its relationship with [Lock-hart] and/or the territorial court of the Virgin Islands. We reject any claim that Red Apple/Grand Union may make to insurance proceeds, and advise you that we will take steps to satisfy the claims [Lockhart] has against policy proceeds, and we will enforce all aspects of the indemnity agreement entered into by Red Apple Group and Grand Union on February 15,1996.
Joint Appendix (“JA”) 1143^44. In addition to that clear disassociation, National Union never paid any legal fees to Grand Union’s counsel.
Accordingly, Lockhart and National Union began settlement negotiations and, on March 1, 1999, entered into an agreement by which National Union agreed to pay Lockhart $2.7 million to reconstruct the Building and Lockhart released all claims against National Union (“National Union-Lockhart Settlement”). Neither Lockhart nor National Union immediately informed Grand Union of their separate settlement.
Meanwhile, Grand Union and Lockhart engaged in separate settlement negotiations and, on March 4, 1999, entered into a “Mediated Settlement Agreement” to settle Grand Union I and Lockhart I. The Mediated Settlement Agreement provided that (1) mutual releases would be exchanged, (2) Grand Union would pay Lock-hart $35,000 and transfer to Lockhart its unused architectural plans for the Building, and (3) Grand Union would surrender its claim to the five years remaining on the Lease. The parties executed a formal release the following day in which Grand Union released all claims against Lockhart and Lockhart released all claims against both Grand Union and National Union.
Days after the Mediated Settlement Agreement, National Union brought suit against Grand Union in New York {“New York Litigation ”), seeking indemnification of the $2.7 million that it paid to Lockhart pursuant to the National Union-Lockhart Settlement. In settlement of that suit, on April 30, 2004, Grand Union paid $1.5 million to National Union in exchange for a release of all of National Union’s claims it.
While National Union and Grand Union were settling the New York Litigation, on February 26, 2001, Grand Union filed this lawsuit against Lockhart. In its complaint, Grand Union alleged fraud, unjust enrichment, and breach of the covenant of good faith and fair dealing. Grand Union’s claims are based on Lockhart’s failure to disclose the National Union-Lock-hart Settlement to Grand Union during their settlement negotiations. Because Lockhart had already released all claims against National Union before March 4, 1999, Lockhart’s release of its claims against National Union in the Mediated Settlement Agreement was worthless. Thus, Grand Union maintains that Lock-hart was unjustly enriched because it obtained Grand Union’s consideration in the Mediated Settlement Agreement in exchange for a release that was worth less than Grand Union understood it to be. Grand Union claims that it was deceived because it settled under the mistaken belief that National Union would be included in the settlement and, as such, National Union would not turn to Grand Union for indemnification.
On January 3, 2005, the District Court dismissed Grand Union’s fraud and good faith claims. The District Court later denied Lockhart’s motion for summary judgment on the unjust enrichment claim, how *251 ever, because “a reasonable juror could determine that Lockhart did not disclose to Grand Union that it had agreed to release its claims against National Union so that Grand Union would confer valuable consideration upon it in exchange for the dismissal of those very same claims.” JA 5. On December 13, 2010, a jury found in favor of Grand Union on the unjust enrichment claim and awarded it $2.7 million in restitution. The District Court thereafter denied Lockhart’s renewed motion for judgment as a matter of law or, in the alternative, for a new trial, and awarded Grand Union prejudgment interest and attorneys’ fees. Lockhart timely filed this appeal.
II.
The District Court of the Virgin Islands had diversity jurisdiction over this case pursuant to 48 U.S.C. § 1612(a) and 28 U.S.C. § 1332. See Edwards v. HOVENSA, LLC, 497 F.3d 355, 357 (3d Cir.2007). We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.
We review de novo the District Court’s denials of Lockhart’s motion for summary judgment and renewed motion for judgment as a matter of law. Stratechuk v. Bd. of Educ., South Orange-Maplewood Sch. Dist., 587 F.3d 597, 603 (3d Cir.2009); Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 211 (3d Cir.2009). Summary judgment should be rendered “if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). “In making this determination, we must view the facts in the light most favorable to the nonmov-ing party and draw all inferences in that party’s favor.” Stratechuk, 587 F.3d at 603 (quotation marks omitted).
There is a similarly high standard for overturning a jury verdict on a renewed motion for judgment as a matter of law. Legal questions are reviewed de novo and the jury’s factual findings are reviewed to “determine whether the evidence and justifiable inferences most favorable to the prevailing party afford any rational basis for the verdict.” Intermilo, Inc. v. I.P. Enters., Inc., 19 F.3d 890, 892 (3d Cir.1994). A court may grant a renewed motion for judgment as a matter of law “only if ‘the record is critically deficient of the minimum quantum of evidence’ to sustain the verdict.” Acumed LLC, 561 F.3d at 211 (quoting Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)). This Court must decide “whether the evidence is sufficient to sustain liability.” Id. (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)). In doing so, the Court “may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury’s version.” Id. (quoting Lightning Lube, Inc., 4 F.3d at 1166).
III.
Lockhart appeals the District Court’s denial of (1) its motion to dismiss or for summary judgment on the unjust enrichment claim; (2) its renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59(a)(1)(A); and (3) its motion to strike Grand Union’s jury demand. Lockhart also maintains that Grand Union failed to prove damages and challenges the award of attorneys’ fees and prejudgment interest.
Lockhart first argues that the District Court should have dismissed Grand Union’s unjust enrichment claim because it was dependant on proof of the same facts as the fraud claim that the District Court dismissed as issue precluded. Because we agree, we will reverse the judgment of the District Court.
*252 The District Court dismissed Grand Union’s fraud claim in this action on January 3, 2005. In the order of dismissal, the District Court held that Grand Union was collaterally estopped from arguing that Lockhart’s failure to disclose its settlement with National Union was fraudulent because Grand Union had raised the same argument in the New York Litigation and it had been rejected by the court. In the New York Litigation, defendant Grand Union alleged in a counterclaim that National Union had committed fraud by intentionally failing “to disclose material aspects of its negotiation and settlement of the Lockhart claim to Red Apple/Grand Union.” JA 54. The New York Supreme Court analyzed Grand Union’s counterclaim as a fraudulent or tortious nondisclosure cause of action. Such a claim in New York requires a showing that “(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiffs thereby, (3) the plaintiffs reasonably relied upon the representation, and (4) the plaintiffs suffered damage as a result of their reliance.” Swersky v. Dreyer & Traub, 219 A.D.2d 321, 326, 643 N.Y.S.2d 33 (N.Y.App.Div.1996) (citation omitted). In addition, the plaintiff must prove that the defendant had a duty to disclose material information. Id. A duty to disclose arises where there is a fiduciary relationship between the parties. Id. at 327, 643 N.Y.S.2d 33. In addition, “[u]n-der the ‘special facts’ doctrine, a duty to disclose arises where one party’s superior knowledge of essential facts renders a transaction without disclosure inherently unfaii'.” Id. (quotation marks and citation omitted).
The New York Supreme Court found that National Union had no duty to disclose, and Grand Union had no actionable claim for fraud, because there was no fiduciary relationship between National Union and Grand Union, and National Union did not have “ ‘superior knowledge of the essential facts,’ ” which would have rendered the transaction without disclosure “ ‘inherently unfair.’ ” JA 54 (quoting Swersky, 219 A.D.2d at 327, 643 N.Y.S.2d 33). National Union did not have superior knowledge because it had advised Grand Union of its intention to deal directly with Lock-hart “in regard to claims it may have against National Union’s policy proceeds” on December 16, 1998, months before the Mediated Settlement Agreement. Id. at 55. Accordingly, Grand Union was on notice that National Union would settle separately with Lockhart, and Grand Union did not have an actionable fraud claim based on fraudulent nondisclosure.
Although Grand Union’s fraud claim in the New York Litigation was against National Union rather than Lockhart, the District Court nonetheless held that Grand Union’s fraud claim against Lockhart in this litigation was issue precluded because it depended on proof of the exact same facts as the fraud claim in the New York Litigation. In both cases, Grand Union would have had to prove that National Union or Lockhart had knowledge of essential facts that rendered the Mediated Settlement Agreement inherently unfair.[2] The question we decide now is whether the dismissal of the fraud claim compelled dismissal of the unjust enrichment claim as well.
Issue preclusion is appropriately invoked if:
(1) the previous determination was necessary to the decision, (2) the identical issue was previously litigated, (3) the issue was decided in a decision that [was] final, valid, and on the merits, and (4) the party that is being precluded *253 from relitigating the issue was adequately represented in the previous action.
Gonzalez v. AMR, 549 F.3d 219, 223 (3d Cir.2008) (quoting Harrilal v. Blackwood, No. CIV. 619/1998, 2001 WL 1769735, at *4 (V.I.Terr.Ct. Dec. 13, 2001)). The relevant elements of tortious nondisclosure in the Virgin Islands are the same as in New York, which are set forth above.[3]
No Virgin Islands statute provides an unjust enrichment cause of action. Instead, pursuant to 1 V.I.C. § 4, “[t]he rules of the common law, as expressed in the restatements of the law ... shall be the rules of decision in the courts of the Virgin Islands ... in the ábsence of local laws to the contrary.” See also Hefferman v. U.S. Virgin Islands, No. 2009/0087, 2010 WL 4942160, at *2 (D.Vi. Nov. 30, 2010). Under the Restatement (Third) of Restitution § 1 (2011), “[a] person who is unjustly enriched at the expense of another is subject to liability in restitution.” The Restatement (Third) of Restitution § 13(1) specifies that the mistake that leads to unjust enrichment can be induced by either fraud or material misrepresentation:
A transfer induced by fraud or material misrepresentation is subject to rescission and restitution. The transferee is liable in restitution as necessary to avoid unjust enrichment.
The comments explain that if the transfer is induced by an “innocent misrepresentation,” it “is subject to rescission only if the misrepresentation was material.” Id. cmt c.[4] Thus, to prevail on an unjust enrichment claim based on a mistake of fact, a plaintiff must prove (1) that a mistake of fact caused the plaintiff to confer a benefit upon another and (2) that the mistake was due to either fraud or an innocent but material misrepresentation. In addition, the court must conclude that equity requires the defendant to return the unjust benefit to the plaintiff. Cruse v. Callwood, D.C. Civ. App. Nos. 2006-71 & 2006-76, 2010 WL 438173, at *6 (D.Vi. Feb. 3, 2010).
Not all of their elements are identical, but tortious nondisclosure and unjust enrichment claims share the element of material mistake of fact. In addition, where *254 there is no fiduciary relationship, both causes of action require a showing that the defendant’s misstatement or omission rendered the transaction unfair or unjust. Although the New York Supreme Court did not state it directly, it held that there was no material mistake of fact here because National Union’s knowledge of the National Union-Lockhart Settlement was not “superior knowledge” of an “essential fact” that rendered the transaction inherently unfair. Thus, with respect to the material mistake element of an unjust enrichment claim, Grand Union’s claim is barred by issue preclusion by the Court’s finding in the New York Litigation. As such, the District Court erred in declining to dismiss the unjust enrichment claim.[5]
Our decision in Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912 (3d Cir.1999), is instructive. In Steamfitters, the unjust enrichment and fraud claims both failed because they shared the element of proximate causation of damages and the plaintiffs failed to establish that element. Because the plaintiff could not prove its fraud claim, we declined to afford it a roundabout route to recovery by way of unjust enrichment. We explained:
In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched).... We can find no justification for permitting plaintiffs to proceed on their unjust enrichment claim once we have determined that the District Court properly dismissed the traditional tort claims because of the remoteness of plaintiffs’ injuries from defendants’ wrongdoing.
Id. at 936-37; see also Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir.2000) (adopting the declaration in Steamfitters that “[i]n the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim.”).[6]
Likewise, in this case, Grand Union’s fraud and unjust enrichment claims both require proof that Lockhart’s nondisclosure was material, caused Grand Union to enter into the Mediated Settlement Agreement, and rendered the settlement unfair or unjust. Because the New York Supreme Court decided those questions in the negative, we conclude that the unjust enrichment claim should have been dismissed on the same basis as the fraud claim.
Moreover, Grand Union’s choice to pursue the unjust enrichment claim on a tort-based theory of nondisclosure meant that its fraud and unjust enrichment claims were one and the same. It is generally understood that tortious nondisclosure is a fraud claim based on an omission rather than an affirmative misstatement. See Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 612-13 (3d Cir.1995) (discussing claim for tortious nondisclosure as a “fraudulent omission claim”); Lightning Lube, Inc., 4 F.3d at 1185 (same); Navarro v. Gov’t of the V.I., 18 V.I. 473, 476-77 (D.V.I.1981) (“[I]n certain cireum- *255 stances nondisclosure is treated as a fraudulent misrepresentation[.]”); Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 560 (1999) (“The tort of intentional non-disclosure has the same elements as intentional misrepresentation except in the case of intentional nondisclosure, the party intentionally conceals a material fact rather than making an affirmative misrepresentation.” (quotation marks omitted)). Thus, by instructing the jury on tortious nondisclosure, the District Court conflated the fraud and unjust enrichment claims and asked the jury to decide a question that was already answered in the New York Litigation. This confusion illustrates that the fraud and unjust enrichment claims are inseparable and that the unjust enrichment claim was an impermissible attempt at a second bite at the apple.
We hold, therefore, that Grand Union’s unjust enrichment claim was barred by issue preclusion and should have been dismissed. Because we hold in favor of Lock-hart on the basis of issue preclusion, we need not reach the other arguments that Lockhart raised in this appeal.
IV.
In accordance with the foregoing, we will reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.

. Grand Union is a wholly owned subsidiary of Red Apple Group, Inc. (“Red Apple”). In turn, Red Apple is owned by John Castimatid-is. Red Apple was originally a plaintiff in this lawsuit but voluntarily dismissed its claims on the first day of trial. Hereinafter, Grand Union, Red Apple, and John Castimatidis will be referred to collectively as "Grand Union.”

. Grand Union also argues that the District Court erred in dismissing the fraud claim but Grand Union did not appeal that decision and that issue is not before this Court.

. The Restatement (Second) of Torts § 551(1), which is applied in the Virgin Islands, defines tortious nondisclosure as follows:
One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
In turn, a duty to disclose exists where, inter alia,
(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.
Id. § 551(2).

. Similarly, the Restatement (First) of Restitution § 28 (1937) provided that:
A person who has paid money to another because of a mistake of fact and who does not obtain what he expected in return is entitled to restitution from the other if the mistake was induced:
(a) by the fraud of the payee, or
(b) by his innocent and material misrepresentation ....
Because the Restatement (Third) of Restitution was published after the District Court denied Lockhart’s renewed motion for judgment as a matter of law, we mention the relevant provisions from both the First and Third Restatements here. As applied to this case, there is no material difference between them, however.

. The other requirements for issue preclusion are also satisfied. The New York Litigation was a final decision on the merits, the dismissal of the fraud claim was essential to the adjudication of Grand Union’s counterclaim, and Grand Union, which was a party to the New York Litigation, was adequately represented and had a full and fair opportunity to litigate the issue in that case.

. Similarly, in Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co., 631 F.3d 436, 448 (7th Cir.2011), the Court of Appeals for the Seventh Circuit upheld the District Court’s holding that the dismissal of plaintiff's fraud claim “took the unjust enrichment claim with it” because plaintiff failed to separately allege facts supporting the unjust enrichment claim.